## Mutual Life Insurance Company of New York v. Louisville Trust Company.

(Decided March 6, 1925.)

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Second Division).

1. Evidence—Thing Proved to Exist Presumed to Continue to Exist Until Contrary Shown.—When a thing is proved to exist, it will be presumed to continue to exist until contrary is shown, or until presumption in conflict with it arises and overcomes it.

2. Death—Continuance of Life Presumed Until Expiration of Statutory Seven-Year Period.—Notwithstanding that under Ky. Stats., section 1639, person absent for seven years is presumed dead, it will be presumed that such person continued to live until full statutory period of seven years had elapsed, unless such second presumption is overcome.

3. Insurance—One Suing on Insurance Policy on Life of One Presumed Dead Must Prove Insured Died Prior to Due Date of Next Premium.—In suit to recover on life insurance policy after expiration of seven years from time of insured's disappearance, where insurer alleged that policy expired because of nonpayment of premium, in view of presumption of continuance of life, plaintiff could not recover unless it could show that insured died prior to due date of next premium.

4. Death—Evidence to Overcome Presumption of Continuance of Life for Seven-Year Period May be Circumstantial.—Evidence to overcome presumption of continuance of life until seven-year period provided for by Ky. Stats., section 1639, has elapsed, may be circumstantial.

5. Death—Conditions Raising Presumption as to Continuance or Destruction of Life May be Considered in Determining Time of Death.—In determining time of death of absent person who, under

Ky. Stats., secton 1639, is presumed dead after expiration of seven years, any conditions from which presumption as to continuance or destruction of life would arise may be considered.

6.  Evidence—Where Death Established by Seven Years' Absence, Letter Written by Absent Person, Showing Intent to Commit Suicide, Admissible as Res Gestae.—Where fact of a person's death has been established by absence for statutory seven-year period, a letter written by him when he disappeared, evidencing intention to commit suicide at once, is admissible as part of res gestae to fix time of his death.

7.  Evidence—Common Knowledge that Suicides Often Leave Written Statements of Intention to Destroy Themselves.—It is common knowledge that many suicides leave written statements of their intention to destroy themselves, and, in absence of anything to contrary, presumption is that such statement by person who has disappeared correctly stated intention.

8.  Insurance—Letters Threatening Suicide Held Admissible— Whether Absent Person Writing Letter Stating Intention to Commit Suicide Actually Did so, and Whether Letter Correctly Stated his Intention, for Jury.—Where death was established by absence for statutory seven-year period, letters written by absent person at time of disappearance, in which he stated intention of committing suicide, were admissible, and questions whether letter correctly stated his intention, and whether he committed suicide then or not, were for jury.

9.  Evidence—Contents of Lost Instrument Inadmissible Unless Reasonable Search Therefor Shown.—The contents of a lost instrument cannot be proved, unless it appears that reasonable search had been made in place where paper was last known to have been, and inquiry made of person last known to have had its custody.

10. Evidence—Evidence of Contents of Letters Held Inadmissible Without Showing that Letters Were Lost or Effort Made to Locate them.—In action on life insurance policy evidence of contents of letters alleged to have been written by insured at time of disappearance, in which he expressed intention of committing suicide, was inadmissible, where there was no showing that letters were lost or that effort was made to locate them.

WM. MARSHALL BULLITT, SQUIRE R. OGDEN and BRUCE, BULLITT & GORDON for appellant.

J. VERSER CONNER and BOOTH, McDOWELL & CONNER for appellee.

OPINION OF THE COURT BY DRURY, COMMISSIONER— Reversing.

The Mutual Life Insurance Company of New York has appealed from a judgment for $1,000.00 recovered against it by the Louisville Trust Company as administrator of the estate of William A. Wallwork.

On May 20, 1895, the Mutual Life Insurance Company issued a twenty-pay policy by which it insured the life of William A. Wallwork for $1,000.00. He was then living in Louisville, Kentucky. Wallwork undertook to pay the premiums on this policy semiannually, $15.51 being due on May 20 and a like sum on November 20 of each year. All the premiums on this policy were paid up to and including the payment due on November 20, 1913.

Wallwork became addicted to the use of drugs and liquor, and, as a result of those habits, he was not able to have steady employment. He left Louisville in 1911 and visited his brother in El Paso, Texas, where he made an effort to correct his habits, but it seems that he was unsuccessful, and on his return to Louisville he arrived at his home in a state of intoxication. His wife procured a divorce on January 11, 1913. About November, 1913, he left Louisville and stated that he was going to Arcadia, Florida. Nothing has been heard of him since, except the two letters which will be mentioned later.

On December 29, 1921, Wallwork, not having returned to Kentucky since he left the state in 1913, was presumed to be dead (see section 1639, Kentucky Statutes), and upon application, the Jefferson county court appointed the Louisville Trust Company as his administrator. On April 19, 1922, the Louisville Trust Company, as his administrator, began this suit, seeking to recover on this contract of insurance, alleging in its petition that William A. Wallwork died in December, 1913. In its answer the Mutual Life Insurance Company denied that Wallwork was dead, and alleged that the policy expired on May 20, 1914, because of nonpayment of the premium due on that date. These allegations were denied by the reply. If suit on this policy had been begun in 1914, claimant would have had to prove, first, that Wallwork was dead, and second, that he died before May 20, 1914. The effect of section 1639 is simply this, it obviates the necessity of proving that Wallwork is dead. When he died is just as much a question at the present time as it ever was. It is a well known rule that when a thing is proven to exist, it will be presumed to continue to exist until the contrary is shown by evidence, or until a presumption in conflict with it arises and overcomes it. Thus, it will be presumed that William A. Wallwork, who was alive when he left Kentucky, in 1913, continued

to live until the full statutory period of seven years had
elapsed, unless this second presumption is by evidence
overcome.    Therefore appellee could not succeed unless
it could support by proof its allegation that Wallwork
died previous to May 20, 1914.

Kendrick, et al. v. Grand Lodge A. O. U. W., 8 Ky.
L. R. 149.   Necessarily this evidence had to be circum-
stantial.   Direct evidence was not required.   See Glas-
cock v. Weare, 192 Ky. 654, 234 S. W. 216, and Kendrick,
et al. v. Grand Lodge, *supra*.   To sustain its petition and
to maintain the issue for it, the Louisville Trust Com-
pany introduced and was permitted to read in evidence
the deposition of Maude Winsworth, formerly Mrs.
Wallwork, the substance of which is:

> "My daughter, Adeline Wallwork Shaw, re-
> ceived a letter from said William A. Wallwork from
> Arcadia, Florida, which was shown to me and recog-
> nized as his handwriting, and in which he stated
> about as follows: 'Ere you receive this, I will have
> shuffled this mortal coil.'   This letter was in the pos-
> session of my daughter, who is now deceased, and
> I only saw the letter once and do not know where
> the same is now."

Also the deposition of J. C. Wallwork, and the sub-
stance of it is:

> "I last heard from William A. Wallwork in De-
> cember, 1913, or in January, 1914.   It was during
> one or the other of said two months.   I had received
> a letter from him, as above set out, which letter was
> written from Arcadia, Florida, and in the letter he
> stated he was sick and very much discouraged and
> hinted at suicide and wanted me to come for him,
> but I wrote and told him it was impossible for me
> to come to him and I asked him to come to El Paso,
> and I have never heard anything of him since."

The deposition of Morton R. Shaw, in substance, is that
the last he heard of or from William A. Wallwork was
a letter received by his wife in the winter of 1913 or 1914,
which was obviously the same letter mentioned by Mrs.
Winsworth, as having been received in December, 1913,
and in which letter the insured wrote that when she re-
ceived the letter he would be dead, or words to that effect.

The witness, Hager, testified that as the head of a
detective agency in Louisville, he was employed by Wall-

work's family to locate him, and that he wrote and went to Punta Gorda, Florida, and Arcadia, Florida, and undertook to locate him, but without success.

The witness, McDonald, testified that he was employed as a lawyer by the family to undertake to locate Wallwork, and he did undertake to do so by correspondence, but without success.

The appellant objected to the testimony of these witnesses relative to the letters mentioned. It insists, first, that if the letters themselves were present, they would not be competent evidence. We cannot agree with it in this contention. In determining the time of death, any conditions from which a presumption as to the continuance or destruction of life would arise are proper to be considered, especially where they tend to strengthen evidence of a character which, considered by itself, would create a reasonable probability of death at a certain time. Thus, where the fact of a person's death has been established from absence, a letter written by him when he disappeared, evidencing the intention to commit suicide at once, is admissible as a part of the *res gestae* to fix the time of his death. This doctrine is supported by the case of Benjamin v. Dist. Grand Lodge, et al., 152 P. 731, 171 Cal. 260. There the insured disappeared, and on the date of his disappearance he wrote to his brother-in-law:

"Dear Herman,

"By the time this letter reaches you, I am at the bottom of the sea. It is terrible, but circumstances are against me. Can't explain. Silence is golden. Yours, Ben."

It became important to establish the time of the insured's death. The court held that this letter was admissible for that purpose.

"The fact of death having been established, the letter written by Mr. Benjamin to Mr. Moser was competent evidence tending to fix the date of his death. It tended to establish suicide and the date thereof, and it was admissible as part of the *res gestae*. Rogers v. Manhattan Life Ins. Co., 138 Cal. 289, 71 Pac. 348."

Appellant strenuously objects to these letters as being self-serving and no part of the *res gestae,* but these two

cases are to the contrary, so also is section 108 of Green-leaf on Evidence.

Under the facts proven, Wallwork was presumed to be dead. When he died was a fact to be found by the jury. His letters indicating his intention to commit suicide were themselves some evidence of that intention. He may truly have had no such intention; that was a question for the jury. If, however, he had come to the conclusion that life was not worth living, he was face to face with one of the deadliest perils that can beset an unsuccessful and disheartened man. It is a matter of common knowledge that many suicides leave written statements of their intention to destroy themselves. In the absence of anything to the contrary, the presumption is that these letters correctly stated his intention. Whether they did or not, and whether he committed suicide then or not, were questions for the jury.

Appellant also objects to the evidence of these witnesses relative to the letters, because there is a total absence of evidence showing that the letters about which these witnsses testified were lost. There is no evidence that any effort was made to locate the original letters, and no explanation is attempted to be made accounting for their absence. Its objection to these letters on this score is well taken, for it is well settled that the contents of a lost instrument cannot be proved unless it appears that reasonable search has been made in the place where the paper was last known to have been, and if not found there, that inquiry has been made of the person last known to have had its custody. The proponent must show that he has in good faith exhausted, in a reasonable degree, all sources of information and means of discovery which the nature of the case would naturally suggest, and which were accessible to him. If any suspicion hangs over a lost instrument, or there is any reasonable ground to suspect that it is designedly withheld, a rigid inquiry should be made into the reasons of its nonproduction. See Baird & Williams v. Pewitt, 190 Ky. 323, 227 S. W. 297.

Therefore, the judgment is reversed and the cause remanded, with directions to award the appellant a new trial and for further proceedings consistent with this opinion.