# Jefferson Standard Life Ins. Co. Of Greensboro, N. C. v. Hewlett.

## Bankers Life Co. v. Same.

## New York Life Ins. Co. v. Same.

March 5, 1948.

Rehearing denied May 14, 1948.

R. T. Caldwell, Porter M. Gray, Frank C. Malin and Malin & Johnson, Wm. Marshall Bullitt, R. Lee Blackwell and Bullitt & Middleton for appellants.

Martin & Smith, Eldred Adams, Martin & Smith, Eldred Adams and Martin & Smith for appellees.

OPINION OF THE COURT BY JUDGE LATIMER—Affirming.

Three policies of insurance had been issued upon the life of William Herbert Hewlett. One by the New York Life Insurance Company in the sum of $2,000, in which assured's infant daughter, Margaret Ann Hewlett, was named as beneficiary. One by the Bankers Life Company of Des Moines, Iowa, in the sum of $5,000 in which assured's wife, Julia Kouns Hewlett, was named as beneficiary. The other by the Jefferson Standard Life Insurance Company of Greensboro in the sum of $2,500 also payable to the assured's wife. Recovery was had on these policies in these actions subject to certain sums which had been borrowed by the insured during his lifetime. These appeals result.

This is a disappearance case. The basic question presented is: Did the assured die before the expiration date of the insurance carried on his life? If he died the latter part of January or the first of February 1937, the policies were in force and effect. If after about January 1, 1940, the policies had lapsed. Consequently, the question resolves itself into whether or not the assured, after not having been heard from or seen for

7 years, died at the beginning of that 7 year period or at the close of it.

The insured was born November 1, 1898. He was reared in and about the community of Blaine, Lawrence County, Kentucky. As a young man he taught school at Blaine. He was married in that community to Julia Anne Kouns. The Hewlett and Kouns family appear to have been life long neighbors and close friends. At the time of the trial the assured was survived by both his father and mother, a sister, a brother, his widow and his daughter. With the exception of a short period in his early life when he taught school, he had been a traveling salesman, traveling mostly for wholesale drug companies. He was with McKesson-Robbins Drug Company of Huntington, West Virginia, from February 1928 until about January 1, 1935, when he was discharged because of his habit of drinking. He was re-employed about the first of May, 1935, for about a three months' probationary period, after which it appears he was wholly without employment except for brief periods of two or three days at a time when he would assist in taking inventory for the company.

Following his marriage he and his wife lived for several years in Louisa, Kentucky. In 1934 they moved to Ashland, where they remained about two years. It appears that the habit of drinking grew upon him and during his residence in Ashland he became a confirmed alcoholic. Because of this he was unable to secure employment. This seemed to precipitate periods of despondency.

On the 13th of January, 1937, the insured left his home and family in Blaine to make a trip to Charleston, West Virginia, for the purpose of seeking employment. After arriving in Charleston letters were exchanged between him and his wife and daughter. Some of the letters written by his wife and daughter were later found in his raincoat. He remained in Charleston about 10 days seeking employment. He made reference in one of his letters to having called on an aunt who lived in Charleston.

Having failed to hear from the insured for several days, effort was made by the members of the family to contact him in Charleston through his aunt, who advised

them that he had left Charleston for home about the 23d of January. Notices were placed in Charleston papers and broadcasts were made from Charleston of the fact that the insured was missing. This happened during the unprecedented flood that visited the Ohio Valley and its tributaries during the months of January and February of 1937. As soon as the flood waters had subsided sufficiently for mails to come through, which was after the middle of February, two checks which the insured had given to the Frederick Hotel of Huntington, West Virginia, made their appearance for clearance at the bank in Louisa where the insured and his wife had a joint account. Whereupon, J. L. Hewlett, the father of the insured, made a trip to Huntington in search of his missing son. He learned that his son had been registered at the Frederick Hotel and had stayed there until all the guests were taken from it by boats, when the hotel was invaded by flood waters. In the course of the next few weeks a letter was received by the father which had been forwarded from Ashland, Kentucky, which disclosed that the insured had been at the Prichard Hotel in Huntington. The letter contained a demand for payment of a bill in the sum of $53.20, about ½ of which was for two small checks which the hotel had cashed for the insured, drawn upon funds in the bank in Louisa.

Mrs. Hewlett then went to Huntington for the purpose of calling at the Prichard Hotel to see what she could learn. The management of that hotel displayed to her the registration card showing the insured had registered and was assigned to a room in the latter part of January, 1937. She identified the signature thereon as being that of her husband. She then inquired whether or not anything had been left in his room. She was told to return the following morning and they would search in the storeroom where disclaimed baggage was stored. Upon her return she was shown her husband's black Gladstone bag and other wearing apparel. The management opened the bag in her presence. It contained all the clothing which she had packed for her husband when he left home except such as he was wearing. It contained all his toilet articles, his razor, brush and comb, a thin billfold, which he constantly carried in his inside coat pocket, and which contained photo-

graphs of his wife and daughter. It also contained an inexpensive wrist watch which he usually wore upon his wrist. She communicated these facts to her family, and on the following day her father, the insured's father, and Mr. Kit Carson Elswick, a lawyer from Louisa, went to Huntington for further investigation, and while there called at police headquarters and upon the commonwealth attorney in an effort to ascertain the whereabouts of the insured.

About the 23d day of March, 1937, assured's father, J. L. Hewlett, gave notice to each of the appellants of the disappearance of his son the circumstances surrounding same. Complete and full information was given to representatives of appellants, or agents who called upon members of the family making inquiry and investigation concerning the manner and circumstances of the insured's disappearance.

Action was brought against each of the appellant companies. By order of court these three cases were consolidated and tried as one. Upon the above facts the matter was submitted to the jury, and verdict returned against defendant in each case.

By stipulation the parties to these actions agreed that the transcript of evidence and bill of exceptions filed herein be considered and treated in each of the cases for all purpose on this appeal. Consequently, these three cases have been heard together by this Court. Separate briefs have been filed by counsel for Bankers Life Company of Des Moines, and New York Life Insurance Company. The Jefferson Standard Life Insurance Company of Greensboro, N. C., adopted the brief of the Bankers Life Company of Des Moines. With some little variance the points raised in each brief are substantially the same. A discussion of those points will be made without reference to the particular brief raising the point, or to the order in which they were raised.

At the trial below the plaintiffs advanced two theories to establish a death in 1937: (1) The possibility that Hewlett might have committed suicide. (2) Exposure to imminent peril. Complaint is made relative to the testimony concerning the possibility of suicide. It will be recalled that the widow, Julia Kouns Hewlett,

was named beneficiary in two of the policies and the daughter was named beneficiary in one of the policies. It will further be recalled that by order of the court the cases were consolidated and tried as one. This record discloses no objection or exception to that order. While giving her testimony, Mrs. Hewlett, the beneficiary in two of the policies, was questioned about statements made by the assured concerning an intention to, or thought of, suicide. Objection was made to this testimony on the ground that Mrs. Hewlett was not a competent witness under Civil Code 606-2. It is obvious on the face of it that she was not a competent witness to testify in cases wherein she was the named beneficiary, but that is not true as to the testimony in the case wherein her daughter was the beneficiary. Likewise, when the daughter testified she also was an incompetent witness in the action where she was the named beneficiary, and a competent witness in the actions wherein the mother was beneficiary. As stated above, objections were made and exceptions taken to the admission of this testimony. The difficulty, however, lies in the fact that additional steps were not taken. A motion should have been made immediately to discharge the jury and a request made for a separation of the trials. This was not done. It might be added here that counsel no doubt thought of this, but reasoned, and correctly so, that they would have been no better off in separate trials since in that event the daughter could have testified in her mother's actions and vice versa. The Court cautiously and with painstaking care admonished the jury fully with respect to the testimony of these two witnesses and in which case the testimony of each could only be considered. We cannot agree with appellants in this contention.

It is further urged that this testimony is inadmissible because it was too far removed, and that in order to be competent under the res gestae rule it must be of such content as to show an intention of an immediate execution of the act. Appellants cite in support of this view Mutual Life Insurance Company of New York v. Louisville Trust Company, 207 Ky. 654, 269 S. W. 1014, and Edwards v. Equitable Life Assur. Soc. of the United States, 296 Ky. 448, 177 S. W. 2d 574. The rule referred to in those cases is sound, but we are inclined

to believe the principle as laid down therein would permit the testimony here rather than exclude it. This daughter testified as to what her father said the last time she saw him, which was at the time he was leaving for Charleston, West Virginia. Numerous other witnesses testified about a great many of the facts to which Mrs. Hewlett testified. The assured was a confirmed alcoholic, without employment on account of his habit of drink. He was seized of fits of despondency. He had told his father, in substance, that he was going to seek employment and if he didn't get the employment he would never return. Just what he meant by that is possibly debatable. It could have meant suicide, or it could have meant he was going to parts unknown. Testimony of statements made during these periods of despondency and made at intervals up to the time that he departed, show a continuing state of mind. We think it was proper to admit this testimony and to submit this theory to the jury.

It is also argued that plaintiffs below failed completely to show Hewlett was ever exposed to any specific peril. This argument seems to be based upon the theory that because there was not shown here an outstanding specific peril as was proven in the disappearance cases of Commonwealth Life Ins. Co. v. Caudill's Adm'r, 266 Ky. 581, 99 S. W. 2d 745, 746, and Pacific Mutual Life Insurance Co. v. Meade, 281 Ky. 36, 134 S. W. 2d 960, the defendants were entitled to a peremptory instruction. It is insisted that this is more especially so since the circumstances surrounding Hewlett's disappearance in 1937 are just as consistent with the theory of the defense based upon the presumption of continuance of life as it is with the plaintiff's theory of death by suicide or by reason of the flood. In the Caudill case, supra, we said: "There is a presumption of fact of continuance of life until it is overcome or displaced by a more potent presumption of death. It is the common law that if a person has been absent from his usual place of residence for seven consecutive years, and has not been heard from by those who, if he had been alive, would naturally have intelligence of him, a presumption of death is raised. One who relies upon the unexplained absence for the stipulated period to establish the death of another must not only prove that fact,

but must also produce evidence of a diligent effort to find the missing person in order to justify the inference that death is the probable reason why he was not heard from. Hill's Adm'x v. Metropolitan Life Insurance Co., supra, (240 Ky. 172, 41 S. W. 2d 935); National Life & Accident Insurance Co. v. Pate, 246 Ky. 186, 54 S. W. 2d 663. But it is by no means an absolute presumption. It is open for rebuttal by proof of the existence of the individual, or of circumstances sufficient to overcome it or to raise a conflicting presumption of superior force, or, to speak more accurately, to sustain the original presumption of continuing life. Mutual Benefit Life Insurance Co. v. Martin, 108 Ky. 11, 55 S. W. 694, 695, 21 Ky. Law Rep. 1465; Prudential Insurance Co. v. Gatz, 182 Ky. 218, 206 S. W. 299; Columbia Life Insurance Co. v. Perry's Adm'x., 252 Ky. 793, 68 S. W. 2d 393; Commonwealth Life Insurance Company v. Wood's Adm'x., 263 Ky. 361, 92 S. W. 2d 351. This destruction of the presumption of death may sometimes be by slight evidence, as by the testimony of a credible witness that he has received a letter in the absentee's handwriting within the time. Mutual Life Insurance Co. v. Louisville Trust Company, 207 Ky. 654, 269 S. W. 1014; 17 C. J. 1172 (25 C. J. S., Death, sec. 6)."

We think the facts given above, while possibly not as strong as in the Caudill case, meet the requirements as set out in that case. It will be noted that appellants were early notified of the disappearance of the assured, after which they made careful investigation. Only slight evidence would have been required on their part to have supported the presumption of the continuance of life, but there is nothing in this record to show the slightest evidence, or fact, supporting that presumption. On the other hand, the sudden disappearance, after having written letters to his wife and daughter; the leaving behind of toilet articles and personal belongings; the fact that he was an alcoholic; the fact of this unprecedented flood, all taken together are sufficient to support the verdict as returned by the jury. Consequently, it was proper to refuse the peremptory instruction.

We next discuss the matter of instructions. We have compared the instruction given in the instant case with that which this court directed be given on the second trial of the Caudill case above, and find them to be

almost word for word alike. In the first part of the instruction the court instructed: "* * * if the jury shall believe from the evidence in this case that William Herbert Hewlett disappeared from the Prichard Hotel in the City of Huntington, Cabell County, West Virginia on or about the —— day of February, 1937, and that the plaintiff and her family and the insured's family have been unable to get intelligence of the said William Herbert Hewlett since said time and that they and the plaintiff have made diligent efforts so to do, and that these efforts were without success, you will find that the said William Herbert Hewlett is dead, * * *."

Complaint is made that the above enforced upon the jury the verdict that assured is dead. That is not what the instruction says. If they believed that he disappeared and that the plaintiff and her family and the assured's family had been unable to get intelligence of him and had made diligent effort so to do without success, then they should find that he is dead. There is no other way to submit that question. The presumption of death having been established, the jury may next decide the time of death based upon the facts. The second part of the instruction submitted that question. We think the instructions were correct and proper.

Wherefore, the judgment in each case is affirmed.