17144

JOHN BRYSON TAYLOR, Respondent, v. UNITED STATES CASUALTY COMPANY, Appellant

(92 S. E. (2d) 647)

232

*Messrs. Haynesworth, Perry, Bryant, Marion & John-stone,* of Greenville, and *John A. Marion,* of York,

*Messrs. John M. Spratt,* of York, and *Hemphill & Hemp-hill,* of Chester, *for Respondent,*

April 11, 1956.

LEGGE, Justice.

This is an action for fraudulent breach of a contract of automobile liability insurance. During the trial, appellant made timely motions for nonsuit and for direction of verdict, which were refused; and after the jury had returned a verdict in favor of respondent in the amount of $1,000.00 actual damages, appellant moved for judgment *n. o. v.* or, failing in that, for new trial, which motion was also refused. This appeal is from the orders refusing the motions for directed verdict and for judgment *n. o. v.* or, alternatively, new trial.

The allegations of the complaint were substantially as follows:

That in May, 1953, respondent's automobile driver's license was suspended, and under the South Carolina Motor Vehicle Safety Responsibility law it became necessary for him to file with the State Highway Department a certificate of insurance in order to have his license reissued; that such coverage became what is known as an "assigned risk", and was assigned to appellant, and respondent paid to appellant's agent $15.00 on account of the premium; that thereafter, having been notified that the balance of the premium was $48.75, he paid it on September 26, 1953, and proceeded to operate his automobile in the belief that the policy was in force; that on or about October 10, 1953, he suddenly received notice that the policy was cancelled, no reason therefor being given; that he has since been unable to obtain insurance; and that his premium has been retained by appellant. Further, that the acts of appellant and its agents in taking respondent's money, keeping it, and cancelling his policy without returning lent scheme on the part of appellant to cheat and defraud him; and that because of such acts and

scheme respondent's money has been converted by appellant to its own use, and he has had records placed against him with the State Highway Department which otherwise would not have been placed against him, has been rendered unable to comply with the South Carolina Motor Vehicle Safety Responsibility Law, and has been embarrassed and humiliated and deprived of the use of his automobile, to his damage in the sum of $2,500.00, actual and punitive damages.

Appellant, answering, alleged, in addition to a general denial, that the application for a policy had been made to the South Carolina Automobile Assigned Risk Plan by respondent through the Hiers-Clarkson Insurance Agency of Rock Hill, which was not an agent of appellant; that pursuant to notification by the Assigned Risk Plan, the application and the deposit of $15.00 required by the Plan were submitted to appellant, and thereupon, pursuant to the statutory requirement, appellant issued the policy subject to its terms and conditions and those of the Assigned Risk Plan; that thereafter, not having received payment of the premium, it proceeded, under the statute laws of this State, to notify respondent, through his agent, Hiers-Clarkson Insurance Agency, that unless the premium were received by September 24, 1953, the policy would be cancelled as provided for by statute and the policy provisions; that the premium payment not having been so received, appellant on October 7, 1953, sent notice to respondent, to Hiers-Clarkson Insurance Agency, and to the State Highway Department, that the policy was cancelled as of October 20, 1953; and that after such notice of cancellation, Hiers-Clarkson by letter dated October 9, 1953, forwarded to appellant the amount of the premium, $48.75, which appellant declined to accept and promptly returned.

The Act of the General Assembly approved February 14, 1952, XLVII Stat. at L. p. 1853, and known as the Motor Vehicle Safety Responsibility Act, appears in the 1955 Code Supplement as Sections 46-701 through 46-750.33. Pertinent to the matter before us are certain of its provisions.

One is to the effect that after the State Highway Department shall have suspended the driver's license of a person because of conviction or forfeiture of bail, on a charge of driving while under the influence of intoxicating liquor, such license shall not thereafter be issued to him until he shall have given proof of financial responsibility, Section 46-750.1, by filing with the Highway Department: (1) a written certificate of an insurance carrier authorized to do business in this state, certifying that there is in effect, for his benefit, a motor vehicle liability policy covering such liability to the amount of $5,000.00 for injury to or death of one person, and to the amount of $10,000.00 for injury to or death of two or more persons, in any one accident, and to the amount of $1,000.00 for injury to or destruction of property of others in any one accident; or (2) a bond conditioned for like protection; or (3) a certificate of the State Treasurer certifying that such person has deposited with him cash or securities to the value of $11,000.00 for the satisfaction of any judgment that might thereafter be placed in execution against such person because of bodily injury or death or property damage resulting from the ownership or operation of a motor vehicle by such person after such deposit has been made. Sections 46-702, 46-750.4, 46-750.5, 46-750.8, 46-750.12, 46-750.13. The other is contained in Section 46-720, which provides that the Insurance Commissioner, after consultation with insurance companies authorized to issue automobile liability policies in this state, shall approve a reasonable plan for the equitable apportionment among such companies of applicants for such policies who are in good faith entitled to such policies but are unable to procure them through ordinary methods. Concededly such a plan has been so approved, was in effect during the period with which we are concerned, and was and is known as the Assigned Risk Plan. While all of the details and rules of the Plan are not set forth in the record here, the following matters appear undisputed:

1. A person desiring to obtain automobile liability insurance under the Assigned Risk Plan is required to complete

a form of application setting forth, among other things, the reason for the required filing, and the details of any conviction resulting in the suspension or revocation of his driver's license.

2. If the applicant makes application through another person, such person is known as the "producer of record", and the applicant designates him as such in the application.

3. A deposit of $15.00 is required to be forwarded with the application to the South Carolina Assigned Risk Plan at the office of the Plan in Columbia, S. C.

4. The Plan then assigns the risk to an insurance company in accordance with its rules, and so advises the company, transmitting to it at the same time the completed application and the deposit of $15.00, which is to be applied on the premium of the policy.

5. The company to which the risk has been thus assigned must, within two working days after receipt of the application and deposit, issue the policy or bind the risk. If the company declines to accept the risk, it is required to notify the applicant, and his producer, of such rejection, and that the applicant has the right of appeal to the Governing Committee of the Plan; and the company must also furnish the Insurance Commissioner and the Manager of the Plan with a notice of the rejection and the reasons therefor.

6. If the applicant is eligible for insurance under the Plan, his producer of record is entitled to an allowance, to be paid by the company to which the risk is assigned, for his services rendered in connection with the application.

There is no substantial dispute as to the facts in the present case, which, in brief, were as follows:

On April 14, 1953, respondent was convicted of driving his automobile while under the influence of intoxicants, and thereupon his driver's license was suspended by the State Highway Department for a period of six months. Code 1952, Sections 46-343, 46-348. Thereafter, having been notified by the Highway Department that his driver's license could not

be restored until he had given proof of financial responsibility as required by Section 46-750.1, he tried to obtain a policy of liability insurance through one agency, and, failing there, went on August 31, 1953, to the Hiers-Clarkson Insurance Agency in Rock Hill, where he was informed concerning the Assigned Risk Plan, filled out and signed the form of application for insurance under the Plan, and gave to the Hiers-Clarkson Insurance Agency $15.00 to cover the deposit required to be made with the application. Mr. Hiers, of Hiers-Clarkson, testified that none of the companies that his agency represented would voluntarily accept such a risk, and that therefore application for the coverage had to be made to the Assigned Risk Plan. Neither he nor his agency had ever represented United States Casualty Company.

Following receipt of the application, Mr. S. C. Southard, Manager of the Assigned Risk Plan, wrote on September 3, 1953, to Mr. D. M. Bullen, Vice-President of United States Casualty Company, at the company's New York office, informing him that in accordance with the rules of the Plan respondent's risk was assigned to appellant, and that the "producer of record" was J. M. Hiers. With the letter was enclosed the application and the $15.00 deposit. Copy of the letter was sent to J. M. Hiers.

Under date September 14, 1953, the New York office of appellant wrote to Hiers-Clarkson Agency as follows:

"Hiers-Clarkson Insurance Agency
339 East Main Street
Rock Hill, South Carolina
"Insured—John B. Taylor
Address—873 Cedar Street, Rock Hill, York, South Carolina
Policy Number—AP-232650
Policy Period—9-10-53 to 9-10-54
Policy Limits—BI 5/10,000 PD 5,000
Policy Premium—$63.75 (37.50 26.25)
Deposit Paid $15.00 Amount Due $48.75
"South Carolina Assigned Risk Plan

"Your attention is directed to the items checked below:

"X 1. (x) Policy ( ) Endorsement ( ) Renewal has been issued and forwarded to your agent.

"X 5. Unless Amount Due * is received in this office by September 28, 1953, this policy will be cancelled for non-payment of premium due the company.

"X 6. Financial Responsibility Certificate sent to agent for filing with the proper authorities.

"Note: Copy sent to your agent.

* Have Your Agent Forward Premium Due

To: United States Casualty Company
     Att: Treasurer's Department
     60 John St., New York 38, N. Y.

                 "Very truly yours,

                 E. Shields

                 Automobile Department"

Copy of this letter was sent to respondent and duly received by him.

Under date September 16, 1953, Hiers-Clarkson wrote to respondent, referring to the letter just quoted, and requesting him to come to their office and pay the balance of $48.75 due on the premium, "in order that we might mail this amount to the company". Accordingly, on September 26, 1953, respondent went to the office of Hiers-Clarkson, paid them $48.75, and received the policy, together with the usual identification card, which had been sent with the policy to Hiers-Clarkson. To the outside of the policy, Hiers-Clarkson had affixed its sticker reading "Hiers-Clarkson General Insurance".

Through oversight, Hiers-Clarkson failed to forward to appellant the payment which respondent had made; and accordingly under date October 7, 1953, appellant's New York office wrote to respondent notifying him that the policy was being cancelled, effective October 20, 1953. Notice of such cancellation was also sent from appellant's New York office to the State Highway Department. On October 7, 1953, ap-

pellant's New York office also wrote Hiers-Clarkson as follows:

"Hiers-Clarkson Insurance Agency
339 East Main St.
Rock Hill, S. C.

"Re: John B. Taylor
AP 232650 Assigned Risk

"Gentlemen:

"With reference to our letter of September 14, we have not received the balance of premium which was due on this policy and have therefore cancelled the risk for non-payment of the premium effective October 20, 1953. There is an earned premium of BI 4.09 PD 2.86 total of $6.95 therefore we will return a check for the balance which will be $8.05 plus the agent's 10% commission, this will be forwarded from our accounting department under separate cover.

"Very truly yours,
E. Shields
Auto Dept."

Following receipt of this letter and a visit from respondent, Hiers-Clarkson wrote to appellant on October 9, 1953, apologizing for the delay and enclosing their check for $48.75 to cover the balance of the premium; but appellant declined to accept it.

Under date October 13, 1953, the State Highway Department notified respondent that his suspension period had ended and that his driver's license would be returned to him upon receipt of proof of financial responsibility as required by the statute.

It appears that on October 16, 1953, respondent went to the Rock Hill office of the State Highway Patrol and paid to Patrolman T. K. Clamp 50 cents, for transmittal to the Highway Department in payment for a driver's license for the four-year period ending June 30, 1957, Code 1952, Section 46-166, and Patrolman Clamp gave him a reecipt therefor.

On October 16, 1953, the Highway Department wrote to respondent, informing him that it had received notice of the cancellation of his insurance, effective October 20, 1953, and that unless proof of financial responsibility were filed immediately he must surrender his driver's license. Respondent testified that after receipt of this notice he went to Hiers-Clarkson Agency and asked them about it; showed Mr. Hiers the letter, and told him that his insurance had been cancelled; and that Mr. Hiers said that respondent should "give him $6.75 and start all over again". Respondent, who was employed at that time, testified that he didn't have $6.75, at least, "Not to give to them I didn't", and that he made no effort to obtain insurance through anyone else. He continued to drive his automobile until November 7, 1954, when he was arrested and fined $10.00 for driving without a license. He testified that on December 30, 1954, he had to quit his job because he had no transportation.

The first question presented by appellant's exceptions is whether the evidence summarized above is reasonably susceptible of the inference that Hiers-Clarkson was the agent of the appellant company in respect of collection of the premium from respondent. In our approach to this issue we must consider the evidence in the light most favorable to the respondent's case, and bear in mind also that agency may be created by law as well as by the real act of the principal, and that, with respect to third parties who deal with one as the agent of another, the relation of principal and agent may arise because of estoppel of the principal to deny an apparent agency relied upon by such third person. 2 Am. Jur., Agency, Section 23, p. 26.

Respondent contends that Hiers-Clarkson was appellant's agent from the very beginning of the transaction, because, in the certificate at the end of the application for insurance under the assigned risk plan, Mr. Hiers struck out the printed word "broker" and left in the word "agent" in the first sentence of the certificate, which accordingly read: "I, J. M. Hiers, do hereby certify that I am a licensed S. C.

agent, License No.—, expiring March 1954". The remainder of the certificate is to the effect that Mr. Hiers, who signed it as "Producer of Record", had explained to the applicant the provisions of the Plan, had included in the application all required information given him by the applicant, and would, in the event of cancellation, return to the insured upon request his (Hiers') proportionate share of the return premium. There is no merit in this contention. Hiers could not possibly have intended by this means to designate himself or his firm as the agent of the appellant, for the simple reason that the application was addressed to the Assigned Risk Plan and he did not know to what company the risk would be assigned. Nor was such agency created by the transmission of the application, with respondent's deposit, to the appellant company. The record does not disclose in what form this deposit of $15.00 was remitted by Hiers-Clarkson to the Assigned Risk Plan, or by the Plan to appellant; but that matter is of no consequence, because the letter of September 3, 1953, from the Manager of the Plan to appellant expressly recognizes Mr. Hiers as the "producer of record", and not as appellant's agent. Up to that time, therefore, the record reveals no evidence upon which a finding of agency on the part of Hiers-Clarkson could be predicated.

It appears from the record that the policy, upon its issuance, was sent by the appellant company to W. C. Stone, its agent in the city of Chester, South Carolina, for counter-signature (see Code 1952, Section 37-247), and thereafter returned, so countersigned, to appellant's New York office, which thereupon forwarded it, with its letter of September 14, 1953, before mentioned, to Hiers-Clarkson, who shortly thereafter collected the balance of the premium from respondent and delivered the policy to him. It is true that in the letter of September 14, a copy of which was sent to respondent, it is stated that the "policy has been issued and forwarded to *your agent*"; and, further contains at the end instruction to "Have *your agent* forward premium due" to appellant's New York office; but such use of the words "your

agent" would not be conclusive on the issue of whether or not Hiers-Clarkson was respondent's agent, and are still less persuasive on that issue since the letter was addressed not to respondent, but to Hiers-Clarkson.

Nothing in the record before us suggests that appellant was required, under the Assigned Risk Plan, to effect delivery of the policy and collection of the balance of the premium through Hiers-Clarkson, whose role as producer of record had ended with the transmittal of the application and deposit to the Plan. Subsequent handling of the matter through Hiers-Clarkson was of appellant's own choosing, and the evidence before recited was sufficient, in our opinion, to carry to the jury the issue of whether or not there was thus created an apparent agency which appellant was estopped to deny. *Cf. Moore v. Hardaway Contracting Co.*, 193 S. C. 299, 8 S. E. (2d) 511; *City of Greenville v. Washington American League Baseball Club*, 205 S. C. 495, 32 S. E. (2d) 777.

Appellant next contends that there was no evidence of actionable fraud or of any fraudulent act accompanying the alleged breach of contract; and with this contention we agree. The failure of Hiers-Clarkson to remit to appellant the premium paid by respondent was admittedly negligent, but cannot, by any reasonable inference from the evidence, be transformed into a fraudulent act. Nor can the resulting cancellation of the policy be construed, in any view of the evidence before us, as constituting a fraudulent act. *Cf. Branham v. Wilson Motor Co.*, 188 S. C. 1, 198 S. E. 417; *Patterson v. Capital Life & Health Ins. Co.*, 228 S. C. 297. 89 S. E. (2d) 723. But we do not agree with appellant's conclusion that absence of proof of fraudulent act accompanying the breach of contract entitled appellant to a directed verdict. Such failure of proof affected only respondent's right to punitive damages. *Banahan v. Metropolitan Life Ins. Co.*, 214 S. C. 403, 52 S. E. (2d) 809. And whatever error there may have been on the part of the trial judge in submitting the issue of punitive damages to the jury was rendered harm-·

less by the verdict, which was for actual damages only. *Holder v. Sovereign Camp, W. O. W.*, 180 S. C. 242, 185 S. E. 547; *Haynes v. Graham*, 192 S. C. 382, 6 S. E. (2d) 903; *Humphries v. Stokes Bus Line*, 199 S. C. 132, 18 S. E. (2d) 675.

Appellant's exceptions to the order refusing the motion for new trial all relate to the trial judge's charge. We shall consider them in their order.

> (a) Failure to charge as a matter of law that respondent had failed to mitigate his damages and that he was under a duty to do so.

As the basis for this assignment of error, appellant argues that the respondent admitted that he had made no effort to secure another policy of insurance and gave no reasonable explanation of his failure to do so. But respondent also testified that he didn't have money enough to get other insurance. Under this testimony the trial judge properly, and we think sufficiently, charged that it is the duty of one who has suffered a breach of contract to minimize his damages, that if respondent could have obtained insurance elsewhere it was his duty to do so, and that the jury would have the right to take that into consideration in determining what damages, if any, he was entitled to recover.

> (b) Error in charging that the jury might take into consideration the fact that respondent was unable to comply with the financial responsibility law.

In his charge the trial judge did not state as a fact that respondent had been unable to comply with this law, but he instructed the jury that if they were satisfied by the preponderance of the evidence that appellant had breached its contract and that as a result respondent had been rendered unable to comply with the Motor Vehicle Safety Responsibility Law, they might consider that as an element of damage. We find no error here.

> (c) Error in not charging that under the Assigned Risk Plan the appellant was required to write the policy, but subject to its terms and conditions and

subject to appellant's right to cancel it for non-payment of premium.

The following excerpt from the charge shows clearly that this exception is without merit:

"Defendant conformed with said law and issued the said policy, subject to the terms and conditions of said policy and the terms and conditions of the South Carolina Assigned Risk Plan. * * * There was no responsibility or requirement either by the terms of the contract or by the law that the defendant continue the existence of the contract in the absence of the payment of the premium therefor".

(d) Error in charging as a matter of law that the policy was in effect from September 10, 1953, to September 10, 1954.

The portion of the charge to which this exception relates reads as follows:

"I tell you and charge you as a matter of law that the U. S. Casualty Company and the plaintiff entered into a valid contract of insurance, and that under the terms of the policy, that contract of insurance commenced on September 10, 1953, and expired on September 10, 1954, according to the written contract which is in evidence in this case".

The jury could not possibly have been misled by this statement, which was immediately followed by the charge, quoted under (c) above, that the defendant was not required to continue the contract unless the premium was paid.

(e) Failure to charge that appellant had the right to cancel the policy and return the premium to the broker, if it considered Hiers-Clarkson its broker.

The record does not show that such charge was requested. Moreover, it did not present a sound proposition of law. Appellant's right to return the premium to Hiers-Clarkson, and the legal effect of its act in so doing, were matters to be determined not by appellant's view of the relationship between it and Hiers-Clarkson, but by the jury in the light of all of the evidence.

(f) Failure to charge that "in order to be an agent of a company there must be actual authority from the company to act for said company, it being submitted that under the testimony there was no question raised as to apparent or implied authority; therefore the court should have charged the jury that plaintiff was aware of the authority of Hiers-Clarkson".

There is no merit in this exception. As we have before stated, there was sufficient evidence to take the issue of apparent agency to the jury.

(g) Failure to charge "that the mere cancellation of the insurance policy is not a fraudulent overt act accompanying a breach, so as to support a cause of action for fraudulent breach of contract".

(h) Failure to charge that mere inadvertence could not support an action for fraudulent breach of contract.

The two exceptions last mentioned are disposed of by what has already been said in our discussion of the exceptions relating to the refusal to direct a verdict.

Affirmed.

STUKES, C. J., TAYLOR and OXNER, JJ., and BRUCE LITTLEJOHN, A. A. J., concur.