LEWIS B. UNDERWOOD, ADMINISTRATOR OF THE ESTATE OF HAROLD DEAN UNDERWOOD, DECEASED v. NATIONAL GRANGE MUTUAL LIABILITY COMPANY AND SOUTHERN EXCESS, INC. (FORMERLY FREEMAN AND STAFFORD INSURANCE AGENCY, INC.).

(Filed 12 December 1962.)

1. **Insurance §§ 2, 57—** Insurance agency forwarding application for assigned risk policy is not agent for insurer to whom risk is assigned.

The record owner of title to an automobile purchased for the exclusive use of her son made application to an automobile insurance agency for a policy of liability insurance under the assigned risk plan, and the insurance was assigned by the Department of Motor Vehicles to defendant insurer. Thereafter the named insured requested the agency to endorse the insurance to her sister-in-law, and at the suggestion of an employee of the agency transferred title to the sister-in-law, and the employee of the agency agreed to request insurer to so endorse the policy. The parties stipulated that the agency was not an agent of the insurer who issued the policy. *Held:* The contention that the original policy remained in force because of the knowledge and transactions with the employee of the agency is untenable, since the principle that knowledge of the agent will be imputed to the principal cannot apply in the face of the stipulation that the agency was not an agent of insurer.

2. **Pleadings § 28—**

Plaintiff must recover, if at all, on the theory of the complaint.

3. **Insurance § 61—**

Where cancellation of liability insurance is made by insured, insurer is not required to give notice thereof to insured. G.S. 20-310.

4. **Insurance § 57—**

The owner of the record title to an automobile purchased for the exclusive use of her son transferred title to the car to her sister-in-law. *Held:* Her insurer under an assigned risk policy issued pursuant to G.S. 20-279.21 had the right to decline to endorse the policy over to the new record owner of title, notwithstanding that the vehicle continued to be for the exclusive use of the original owner's minor son, and insurer had the right to cancel the policy and advise that new coverage should be applied for in the name of the sister-in-law.

5. **Same—**

The North Carolina Financial Responsibility Act makes no requirement that upon transfer of title to an insured vehicle the insurance should follow the vehicle.

6. **Same—**

Where the holder of record title to an automobile for the exclusive use of her minor son transfers title to her sister-in-law, the car continuing to be used exclusively by the son, the son cannot be held to use the car with the permission of the original owner, and is not covered by the omnibus clause of the policy in which his mother is named the insured.

**7. Insurance §§ 2, 53.1, 65—**

Where an insurance agency agrees to procure and maintain continuous liability insurance coverage with respect to the operation of an automobile, and breaches the agreement to do so, the administrator of the person killed as a result of the negligent operation of the vehicle, who has recovered judgment against the administrator of the deceased driver and obtained an assignment of the cause of action, may maintain a suit against the agency for the loss sustained by reason of the breach of the agreement.

Appeal by defendant Liability Company and by plaintiff from *Riddle, S.J.,* July 23, 1962, Civil Term of Forsyth.

Plaintiff seeks to recover benefits under an automobile liability insurance policy, or, in the alternative, damages for failure to procure and maintain liability coverage in accordance with assurances given.

*Alvin A. Thomas and Clyde C. Randolph, Jr., for plaintiff.*
*Womble, Carlyle, Sandridge & Rice for defendant Liability Company.*

Moore, J.   The parties waived trial by jury and agreed that the judge hear the evidence, make findings of fact and enter judgment. G.S. 1-184.

The evidence is summarized as follows: In March 1958 Mrs. Bessie Chaffin purchased for the use of her son Jerry Wayne Otwell (Jerry), age 17, an automobile, and registered the title in her own name. She went to the office of Southern Excess, Inc., (formerly Freeman & Stafford Insurance Agency, Inc., and hereinafter referred to as "the Agency") in Greensboro, N. C., and made application for liability coverage for the automobile under the Assigned Risk Plan as a non-certified risk in accordance with the Vehicle Financial Responsibility Act of 1957 (G.S., Ch. 20, Art. 13). Jerry and Mrs. Chaffin's sister-in-law, Mrs. Lillian Underwood, were present at the time the application was made. The application stated that Mrs. Chaffin was the owner of the car, it was registered in her name, and it would be operated by Jerry "100%" of the time. Mrs. Underwood advanced the $50 deposit which must accompany the application. The application was sent to the Motor Vehicle Department at Raleigh, and the North Carolina Assigned Risk Plan (G.S. 20-279.34) assigned the risk to National Grange Mutual Liability Company (hereinafter called "insurer"). The assignment of risk and a copy of the application were sent to insurer. The assignment designated Mrs. Anne B. Welch, an employee of the Agency, as producer of record. The policy, conforming to the requirements of G.S. 20-279.21, was issued, effective 3 April

1958. Mrs. Chaffin decided to move to Florida and arranged for Jerry to remain in North Carolina and reside with Mrs. Underwood. They decided to transfer the title of the automobile to Mrs. Underwood. On 9 June 1958 Mrs. Chaffin, Mrs. Underwood and Jerry went to the office of the Agency in Greensboro, disclosed their plan, asked for information as to procedure, and requested that the insurance be assigned by endorsement to Mrs. Underwood. Assuming that the policy would be thus assigned, Mrs. Welch, employee of the Agency, agreed to request insurer to so endorse the policy. Mrs. Chaffin offered to pay any additional premium needed for the transaction, but was advised that none was required. At the suggestion of Mrs. Welch they went to the office of A. A. A. Motor Club and executed the instruments and certificates necessary to transfer title of the car to Mrs. Underwood. They were then asked for the Form FS-1 (showing insurance coverage in the name of Mrs. Underwood), and, having none, they called Mrs. Welch, who told them to mail the title papers to the Motor Vehicle Department in Raleigh and she would procure the FS-1 from insurer within 15 days. The Agency was not an agent of insurer, it was not one of the Agency's regular companies, and Mrs. Welch was not authorized to issue the FS-1. The title papers were mailed to Raleigh; Mrs. Chaffin delivered her policy to Jerry, and she left for Florida about 20 June 1958. In the meantime Mrs. Welch wrote insurer requesting an endorsement changing the name of insured to Mrs. Underwood and a Form FS-1, and stating that the "principal operator . . . is still Mrs. Chaffin's son." On 20 June 1958 insurer wrote Mrs. Welch that "an Assigned Risk Policy cannot be transferred from one individual to another," that the policy "should be cancelled and new coverage applied for in the name of" Mrs. Underwood. In response to a note from Mrs. Welch, Mrs. Underwood and Jerry went to the Agency's office on 27 June 1958 and were told the contents of insurer's letter, and were advised that the Chaffin policy had to be cancelled and a new policy applied for through the Assigned Risk Plan. The Chaffin policy was then delivered to Mrs. Welch, and Mrs. Underwood signed an application for a new policy. Mrs. Welch then asked for the $50 deposit to attach to and send with the application. At this point the evidence is conflicting. Mrs. Underwood testified that she told Mrs. Welch they did not have $50, Mrs. Chaffin had offered to pay any additional premium required but had gone to Florida, that she asked Mrs. Welch to take the refund of the unearned premium on account of the Chaffin policy and send it to Raleigh and she (Mrs. Underwood) would pay the difference, if any, that Mrs. Welch agreed and said she would have the refund sent to her (Mrs. Welch) and there would be insurance in full force and effect on the car, and that she (Mrs. Underwood) was

told the the Chaffin policy "was being cancelled." Mrs. Welch testified that she told Mrs. Underwood that "a $50 deposit would have to go with the application" and Mrs. Underwood stated that they didn't have $50 and "would have to wait for the return premium from the old policy before they would send in the new application," that she (Mrs. Welch) "held the application waiting for them to bring in $50.00," and that there was no promise that insurance would be in full force and effect while waiting for the refund, "the insurance was to be cancelled — they knew that." On the same day, 27 June 1958, the Agency wrote insurer stating: "We are returning the . . . policy for cancellation. Will you please send the return premium direct to insured, in care of Mrs. . . . Underwood, Route #1, Liberty, N. C. Please Rush." Insurer cancelled the policy on its record, effective 27 June 1958, and within 15 days sent Form FS-4 (termination notice) to the Department of Motor Vehicles. Insurer mailed refund of $33.67 on 28 July 1958. Later, at the request of an attorney, insurer reviewed its file and found error in the refund and sent a further refund of $18.01 on 20 October 1958. On 4 August 1958 plaintiff's intestate (son of Mrs. Underwood) was riding in the car with Jerry. The car overturned and both were killed. Insurer and the Agency were both notified, but they advised that there was no insurance coverage. Plaintiff sued Jerry's administrator to recover for the wrongful death of his intestate. Insurer had notice of the suit but declined to defend the action. Plaintiff recovered judgment for $8000 ($3000 in excess of the policy limit). Before trial the case could have been compromised for $5000, and insurer was so advised. After execution was returned unsatisfied, demand for payment was made on insurer and the Agency, and the present action was instituted.

The complaint alleges facts generally in accord with the above recital of the evidence, but according to the version most favorable to plaintiff, and in addition alleges that Jerry was the owner of the automobile, the Agency was agent of insurer and was at all times acting within the scope of its authority as agent, insurer purported to cancel the policy on the basis of erroneous information furnished it by its agent, the Agency, and contrary to the agreement of the Agency with Mrs. Underwood and Jerry, the Chaffin policy was surrendered to the Agency "on condition that the policy should remain in full force and effect until . . . a new policy was procured, so as to afford . . . continuous coverage," Mrs. Chaffin never authorized the cancellation of the policy, and, if the Agency was not the agent of insurer, it was acting as agent for Mrs. Chaffin, Mrs. Underwood and Jerry and failed to procure and maintain in full force and effect valid insurance coverage in accordance with its agreement to do so.

Insurer denies coverage; and the Agency denies that the Chaffin policy was surrendered to it conditionally, and denies that it agreed to procure and maintain continuous insurance coverage.

The court made full findings of fact, generally in accordance with the foregoing summary of the evidence (where not in dispute), and also the following findings (numbering ours): (1) Jerry Wayne Otwell was the beneficial owner of the automobile; (2) the policy was delivered to the Agency "with the understanding and on condition that this policy should remain in full force and effect until a new policy . . . was procured, so as to afford continuous insurance coverage," and (3) the Agency "had no authority from the named insured or from Jerry Wayne Otwell, or Lillian Otwell Underwood to surrender (the policy) for cancellation. . . ."

The court made, among others, the following conclusions of law: (1) The "policy . . . was in full force and effect as of August 4, 1958," and (2) "there are no circumstances in this action which might constitute a waiver or an estoppel, or render harmless the failure of defendant (insurer) to provide notice to the named insured as required by the provisions of G.S. 20-130."

Judgment was entered decreeing that plaintiff recover of defendant insurer the sum of $8000, together with interest and costs, and dismissing plaintiff's action against the Agency. Insurer appeals. Plaintiff appeals from the dismissal of his action against the Agency.

As against insurer it appears that plaintiff's theory of the case, as set out in the complaint, is that the policy issued to Mrs. Chaffin was in full force and effect on 4 August 1958, date of the accident, for the reason that the Agency was the agent of insurer, and the information received and the agreement made by the Agency are imputed to and binding upon insurer, the principal. But this theory of the case is laid at rest by the stipulations of the parties. It was stipulated that the Agency was not at any time the agent or acting as agent for insurer. We have said that recovery is to be had if allowed at all, on the theory of the complaint, and not otherwise. *Coley v. Dalrymple*, 225 N.C. 67, 33 S.E. 2d 477; *Balentine v. Gill*, 218 N.C. 496, 11 S.E. 2d 456. But we elect to consider also the other questions raised.

The trial court's decision apparently is based on the proposition that insurer failed to give the named insured notice of cancellation in accordance with the provisions of G.S. 20-310. Plaintiff's cause of action against insurer is not grounded on failure to give such notice; the complaint makes no allegation with respect to notice, it alleges that there was no authority to cancel. We point out, parenthetically, that the law is that, where there is a cancellation by *insured* insurer is not required to give notice of such cancellation to the insured. *Faizan v.*

*Insurance Co.,* 254 N.C. 47, 118 S.E. 2d 303; G.S. 20-310; Insurance Handbook, "The 1957 Vehicle Financial Responsibility Law" (N. C. Department of Motor Vehicles), Art. IX, p. 5. Moreover, cancellation is not the determinative question on this appeal. Defendant insurer alleges in its answer that title to the automobile was transferred from Mrs. Chaffin and vested in Mrs. Underwood on 9 June 1958, and after that date Mrs. Chaffin, the named insured, was not the owner of and had no insurable interest in the automobile, and the transfer of ownership terminated the insurance coverage as a matter of law. If this proposition is valid, there was no coverage on 4 August 1958, and plaintiff is not entitled to recover in his action against insurer.

On this phase of the case the facts are not in dispute. Mrs. Chaffin purchased the automobile and registered it in her name. Mrs. Chaffin applied for insurance under the Assigned Risk Plan. Upon receiving her application, the Motor Vehicles Department in Raleigh assigned the risk to insurer, and mailed the assignment and a copy of the application to insurer. The application stated that the automobile was owned by and registered in the name of Mrs. Chaffin and that it would be operated at all times by her minor son. The assignment of risk listed Mrs. Anne B. Welch as "producer of record," that is, producer of the business and entitled to a commission. The policy was issued in compliance with the requirements of G.S. 20-279.21. As required by statute it contained an "omnibus clause," stating in pertinent part the following: "With respect to the insurance for bodily injury liability . . . the unqualified word 'insured' includes the named insured (Mrs. Chaffin) . . . and also includes any person while using the automobile . . . , provided the actual use of the automobile is by the named insured . . . or with the permission of 'named insured.'" The policy also contained a clause entitled "Assignment," which provides: "Assignment of interest under this policy shall not bind the company until its consent is endorsed hereon." Sometime after the policy was issued it was cancelled for non-payment of premium, but was reinstated. Later the insurer received Mrs. Welch's letter asking for endorsement changing named insured to Mrs. Underwood. Insurer answered, declining to issue the endorsement, and advising that under the Assigned Risk Plan a policy could not be transferred from one individual to another, and if Mrs. Underwood had assumed ownership the policy should be cancelled and new coverage applied for in her name. Thereafter insurer received by mail the policy for cancellation, and sent Form FS-4 to the Department. In the meantime Mrs. Chaffin on 9 June 1958 assigned the title in due form to Mrs. Underwood and this assignment was mailed to the Motor Vehicles Department. The Agency and Mrs. Welch were not agents of insurer, and their transactions and

agreements with Mrs. Chaffin, Mrs. Underwood and Jerry were not binding on insurer.

We have not had occasion to consider the question of coverage, as related to the Vehicle Financial Responsibility Act of 1957, in a factual situation such as is here presented. But the Virginia Court has considered this precise question, upon essentially similar facts. *Nation-wide Mutual Insurance Co. v. Cole,* 124 S.E. 2d 203 (Va. 1962). The North Carolina Vehicle Financial Responsibility Act of 1957 (G.S., Ch. 20, Art. 13) was involved. H resided in North Carolina. His operator's license had been suspended. He transferred the title and possession of his automobile to C, his brother-in-law. C procured an assigned risk policy covering the automobile. When H became entitled to have his license reinstated, C assigned the title and delivered the possession of the automobile to H. The title assignment was not sent to the Department of Motor Vehicles. H applied for an assigned risk policy, which was issued on 11 February 1959. H was involved in an accident in the State of Virginia with this automobile on 1 February 1959, after transfer of the title to him but before the issuance of the policy in his name. Plaintiff Cole recovered judgment for $15,000 against H on account of injuries suffered in the accident. The question, in the case above cited, was whether there was coverage under C's assigned risk policy. The Virginia Court in an unanimous opinion, delivered by Eggleston, C.J., held that there was no coverage. The following excerpts from the opinion are noteworthy:

". . . . The problem here is one of *coverage* and not of *cancellation.* There is no contention that the policy had been cancelled. The question is whether the *coverage* afforded by the policy to Clark was extended and transferred to Harris along with the transfer of the ownership of the car.

"The plaintiff argues that because of the spirit and purpose of the Financial Responsibility Act to afford better protection to the public against irresponsible and reckless drivers, it was the legislative intent that upon change of ownership of a motor vehicle the insurance coverage thereon under an owner's policy should 'follow the car.' We are cited to no provision in the Act to support this contention, nor do we perceive any.

"G.S. sec. 20-279.21 of the Financial Responsibility Act requires that an owner's motor vehicle policy of liability insurance contain what is commonly called an omnibus coverage clause. The policy here complied with this requirement.

". . . . But we find in the Act no requirement that the insurance company must see that coverage under an owner's policy issued by

it follows the car with change of ownership. On the contrary, the Act places this burden on the owner. G.S. sec. 20-309 requires 'the owner' of a registered motor vehicle to show and maintain proof of financial responsibility continuously throughout the period of registration. G.S. sec. 20-313 prohibits 'any owner' from operating a motor vehicle without having in force the 'financial responsibility' required by the Act.

"In the absence of any provision in the Financial Responsibility Act broadening the liability of the insurer, such liability must be measured by the terms of its policy as written. See *Howell v. Travelers Indemnity Co.*, 237 N.C. 227, 74 S.E. 2d 610, 612; *Adkins v. Inland Mutual Insurance Co.*, 124 W. Va. 388, 20 S.E. 2d 471, 472.

"Our inquiry, then, is narrowed to whether the operation of the car by Harris is within the coverage of the policy. Specifically, the question is whether such operation is within the omnibus clause. Under the terms of the policy and consistent with the requirements of G.S. sec. 20-279.21, it afforded protection to the 'Named Insured' and also 'any person while using the automobile * * *, provided the actual use * * * is by the Named Insured,' or his spouse, 'or with the *permission* of either.'

" . . . . It is well settled that 'permission' to drive a car, within the meaning of the omnibus coverage clause, connotes the power to grant or withhold it. Therefore, in order for one's use and operation of an automobile to be within the meaning of the omnibus coverage clause requiring the permission of the named insured, the latter must, as a general rule, own the insured vehicle or have such an interest in it that he is entitled to the possession and control of the vehicle and in a position to give such permission. If the named insured has sold the vehicle, its subsequent use by the buyer is by virtue of the latter's ownership and his right to control it and not by virtue of the permission of the named insured seller. (citing many authorities).

"As is said in *Byrd v. American Guarantee & Liability Ins. Co.*, *supra*, 180 F. 2d 249, 'There is no insurance separate and distinct from the ownership of the car.' This is so because an owner's motor vehicle liability policy is a contract between the insurance company and the owner."

We agree with the reasoning of the Cole opinion and the result reached. There is no factual difference in the instant case which justifies a different result. The Responsibility Act makes no requirement that insurance, in case of transfer of title, follow the vehicle. We said in

*Howell v. Indemnity Co., supra* (cited in Cole), that if limits of coverage in an insurance policy are consistent with the statute, insurer may not be held liable beyond the coverage specified in the policy. Mrs. Chaffin's policy clearly states that "Assignment of interest shall not bind the Company (insurer) until its consent is endorsed hereon." This is a binding provision of the insurance contract, not in conflict with any statutory provision, and insurer was within its rights in declining to endorse the policy to Mrs. Underwood. See *Rogers v. Lumbermans Mutual Casualty Co.,* 124 S. 2d 70 (Ala. 1960).

It is not clear what significance the trial court placed upon its finding that Jerry Wayne Otwell was the beneficial owner of the automobile. If the import is that he was the owner and had right of possession and control, there was most certainly no coverage. The insurance contract was with Mrs. Chaffin and the policy covered the named insured, Mrs. Chaffin, and any other person while using the automobile, provided the actual use was with the *permission* of Mrs. Chaffin. In order to grant permission, as the word "permission" is used in the policy, there must be such ownership or control of the automobile as to confer the *legal* right to give or withhold assent. It is something apart from a general state of mind. If Jerry actually owned the automobile and had the right to possession and control, or if Mrs. Chaffin parted with the title (and it is undisputed that she assigned to Mrs. Underwood on 9 June 1958 such title as she had) then, in either event, the operation of the car by Jerry on 4 August 1958 was not with the permission of Mrs. Chaffin within the purview of the omnibus clause of the policy. Insurer had no contract with or responsibility to or for Jerry apart from the ownership of the vehicle by Mrs. Chaffin. *Adkins v. Inland Mut. Ins. Co., supra; United States Casualty Co. v. Bain,* 62 S.E. 2d 814 (Va. 1951) ; *Mason v. Allstate Insurance Co.,* 209 N.Y.S. 2d 104 (1960) ; *Byrd v. American Guarantee and Liability Ins. Co.,* 180 F. 2d 246 (4 Cir. 1960).

Defendant insurer's defense of non-coverage is clearly sustained by the undisputed facts on this record. As to insurer the judgment below is reversed.

Plaintiff contends that the court erred in dismissing his action against the Agency, Southern Excess, Inc. Plaintiff alleges that the Agency agreed with Jerry Wayne Otwell to procure and maintain continuous liability insurance coverage with respect to the operation of the automobile in question, has breached the agreement, the estate of Jerry Wayne Otwell has suffered damages by reason of the breach, and the administrator of Jerry Wayne Otwell, deceased, has assigned the cause of action to the within plaintiff, who is entitled to maintain the suit. These pleadings raise issues of fact and questions of law

which were not determined by the judgment below. As to plaintiff's cause of action against the Agency, a new trial is awarded.

As to defendant National Grange Mutual Liability Company, the judgment below is

Reversed.

As to defendant Southern Excess, Inc. (formerly Freeman & Stafford Insurance Agency, Inc.)

New trial.