ALLSTATE INSURANCE COMPANY v. LINDA MILLS HALE, MARY PEOPLES SMITH, AND JERRY WINFRED HENRY, BY HIS GUARDIAN AD LITEM, RALPH GOODALE.

(Filed 3 May, 1967.)

**1. Insurance § 2—**

Evidence that insurer sent the assigned risk policy in suit to the producer of record of the policy for delivery to the insured and instructed such producer of record to collect from insured the balance due on the annual premium, is sufficient to support a finding by the jury that the producer of record was a special agent of insurer, and payment by insured of the balance of the premium to the producer of record is payment to insurer.

**2. Insurance § 61—**

Where an agent with authority from insurer to accept the balance due on the annual premium on an assigned risk policy accepts from insured the balance of the premium on the morning prior to the mailing of the notice by insurer of cancellation of the policy for nonpayment, the attempted cancellation by insurer is ineffective.

**3. Same—**

Under the 1963 amendment to the Vehicle Financial Responsibility Act, insurer must give the Department of Motor Vehicles 15 days notice prior to the effective date of cancellation of an assigned risk policy.

**4. Insurance § 53.2—**

In regard to insurance in excess of the amount required by the Vehicle Financial Responsibility Act, a policy of insurance is voluntary and the rights and liabilities under the policy will be determined by construction of the policy agreement; but in regard to assigned risk insurance the policy must be interpreted in light of the statutory requirements rather than the agreement or understanding of the parties.

APPEAL by plaintiff from *Gwyn, J.,* October 10, 1966 Civil Session, FORSYTH Superior Court.

The plaintiff, Allstate Insurance Company, instituted this civil action under the Declaratory Judgment Act to have the Superior Court determine and declare its duties and liabilities to the defendants arising under the plaintiff's policy of automobile liability insurance issued to the defendant, Mary Evans Smith (also known as Mary Peoples Smith), under the North Carolina Assigned Risk Plan.

On October 22, 1964, Mary Evans Smith of Winston-Salem, owner of a 1957 Ford automobile, called on Harold Roberts Insurance Agency of Winston-Salem for the purpose of securing liability insurance on the Ford automobile. Mrs. Smith disclosed to Mr. Harold A. Roberts that her son, James Peoples, Jr., age 17, was to have the exclusive use of the vehicle. Roberts informed her she could

not qualify for voluntary insurance on account of the boy's age, and it would be necessary for her to get insurance under the North Carolina Assigned Risk Plan. Roberts prepared for her a proper application which he forwarded to the Plan in Raleigh. Mrs. Smith gave him $50 as a down payment on the premium, which he also forwarded with the application.

The application was assigned to Allstate Insurance Company and Roberts was designated as producer of record. Allstate issued the policy effective October 27, 1964, sent it to Roberts for delivery to Mrs. Smith and for collection of $75 balance due on the premium. Allstate paid Roberts his percentage of the $50 as producer of record and instructed him to collect $75 balance due on the insurance policy, with notice the policy would be cancelled in 30 days if payment of the balance due on the premium was not made. There was evidence a letter was mailed to Mrs. Smith to that effect. She testified, however, she never received any notice of cancellation.

When the Roberts Insurance Agency office opened on the morning of December 2, 1964, Mrs. Smith, according to her testimony, paid to Roberts the balance of $75 which should have continued the insurance in full force and effect until October 27, 1965. Roberts did not forward any part of the $75 to Allstate and on the afternoon of December 2, 1964, between 4:30 and 5:00, Allstate Insurance Company, from its Charlotte office, mailed notices of the cancellation of insurance on Mrs. Smith's Ford. One copy was sent to Mrs. Smith which, according to her testimony, she never received. A copy of the notice was sent to Roberts and enclosed was a check payable to Mrs. Smith and Roberts for $32.50, the unearned part of the $50 premium paid up to the time the cancellation was attempted. On December 29, 1964, Allstate sent the notice of cancellation to the Department of Motor Vehicles on Form FS-4, giving "12-19-64" as the date the cancellation became effective. This notice was received in the office of the Department of Motor Vehicles on January 11, 1965. Roberts cashed the check, but did not account to Mrs. Smith. Roberts testified Mrs. Smith's endorsement was not on the check when he cashed it at the bank.

Roberts testified that he wrote to Mrs. Smith on February 10, 1965 informing her he had received the check for the unearned premium and would hold it until she paid an additional amount of $36 for other insurance. She testified she did not receive this letter. On August 30, 1965, her son's friend, Jerry Winfred Henry, driving the Ford with her son's permission, was involved in an accident in which Linda Mills Hale was injured. On October 28, 1965 she in-

stituted a civil action against Mrs. Smith and Jerry Winfred Henry to recover damages for the injuries she sustained in the accident.

Allstate's purpose in instituting this action is to have the Court determine its duties and liabilities with respect to the defense of the action for Mrs. Smith and Henry and its liability to the claimant for her injuries. The Court, over plaintiff's objection, submitted two issues which the jury answered as here indicated:

> "1. At the time of the alleged payment of the sum of $75.00 to Harold A. Roberts as the balance due on the automobile insurance policy, was the said Harold A. Roberts the agent of the plaintiff, Allstate Insurance Company, and as such acting within the scope of his authority, as alleged in the Answer: ANSWER: Yes.
> 2. Was the Allstate policy No. 35 325 244AR, as issued to the Defendant Smith, effectively cancelled prior to August 30, 1965, as alleged? ANSWER: No."

In addition to the issues, the Court made extensive findings of fact not necessary to be repeated here and concluded as a matter of law:

> "(2. That Allstate Insurance Company, under its said insurance policy, owes the duty to the defendants Smith and Henry to defend the suit of LINDA MILLS HALE v. MARY PEOPLES SMITH and JERRY WINFRED HENRY presently pending in the Superior Court of Forsyth County;)
> (3. That Allstate Insurance Company, under its said insurance policy, is obligated to pay any judgment rendered in favor of Linda Mills Hale in the case of LINDA MILLS HALE v. MARY PEOPLES SMITH and JERRY WINFRED HENRY;)"

The plaintiff excepted and appealed, assigning errors.

*Womble, Carlyle, Sandridge & Rice by Grady Barnhill, Jr., for plaintiff appellant.*

*Mast and Wilson by David P. Mast, Jr., for defendant Hale.*

*White, Crumpler, Powell & Pfefferkorn by James G. White for defendants Smith and Henry.*

HIGGINS, J. In response to the issues submitted, the jury found: (1) Harold A. Roberts was the agent of plaintiff Allstate Insurance Company and acting within the scope of his authority when he collected from Mrs. Smith the balance of $75 due on the policy involved in this cause; and (2) the policy was not cancelled prior to August

30, 1965 when the insured vehicle was involved in the accident in which the defendant Linda Mills Hale was injured.

The plaintiff stressfully contends that Harold A. Roberts at all times was acting independently as a producer of record in obtaining the insurance policy and was acting as the agent of Mrs. Smith thereafter, and at no time was he the agent of Allstate. Plaintiff further contends that Mrs. Smith's payment to Roberts was not a payment to Allstate and consequently the cancellation for nonpayment of premium was fully authorized by law.

The evidence fails to show Roberts was ever the general agent of Allstate. It is sufficient, however, to show that Roberts was authorized by Allstate to deliver its assigned risk policy to Mrs. Smith and to collect from her $75 balance due on the annual premium. " 'A general agent is one who is authorized to do all acts connected with a particular trade, business or employment, and a special agent is one authorized to do one or more specific acts in pursuance of particular, specific instructions or within restrictions necessarily implied from such instruction.' 3 Am. Jur. 2d 422". Lee, N. C. Law of Agency & Partnerships, Sec. 45. "(A) special agent can only contract for his principal within the limits of his authority, and a third person dealing with such agent must acquaint himself with the strict extent of the agent's authority and deal with the agent accordingly." *Iselin & Co. v. Saunders,* 231 N.C. 642, 58 S.E. 2d 614, citing *Graham v. Ins. Co.,* 176 N.C. 313, 97 S.E. 6; *Swindell v. Latham,* 145 N.C. 144, 58 S.E. 1010; 122 Am. St. Rep. 430; Mechem on Agency (2d Ed.) Vol. 1, Sec. 742; 2 Am. Jur., Agency, Sec. 96, 2 C.J.S., Agency, Secs. 93, 114. "A broker authorized to deliver the policy and collect the premium has been quite generally held to be the agent of the company in respect to those acts." Mechem on Agency, Sec. 2369 (see footnote citing numerous authorities). "An insurance broker to whom a policy is entrusted by the insurer for delivery to the insured has the authority to receive the first premium, and payment to the broker constitutes payment to the insurer." Couch on Insurance (2d Ed.) Vol. 3, Sec. 25:97.

It is true that Roberts was the producer of record. However, nothing in the Assigned Risk Plan appears to require the insurer to send the policy to the producer for delivery or for the collection of the premium or any part thereof. If the insurer elects to assign these responsibilities to the producer of record, he becomes the agent of the insurer for these specific activities. At least assignment of these duties furnishes evidence from which the jury may infer the special agency. A case in point is *Taylor v. Casualty Co.,* 229 S.C. 230, 92 S.E. 2d 647. The South Carolina Court held the ·producer of

record completed his obligation when he forwarded the application and the deposit to the Assigned Risk Plan. Subsequent actions were of the insurer's "own choosing" and were sufficient to carry the issue of agency to the jury. In *Underwood v. Liability Co.*, 258 N.C. 211, 128 S.E. 2d 577 and *Daniels v. Ins. Co.*, 258 N.C. 660, 129 S.E. 2d 314, a different question was involved.

The evidence of agency was sufficient to require Judge Gwyn to submit the issue to the jury and to support the jury's finding that the agency existed. The acceptance by the agent of the full balance due on the premium before cancellation prevented the insurer from terminating the policy for nonpayment of the premium. The payment to the agent was payment to the principal. The evidence fixed the time of the payment as early in the morning of December 2, 1964. Notice of cancellation was not mailed until later that afternoon.

Some confusion has arisen as to the method of cancelling assigned risk policies. The Vehicle Financial Responsibility Act of 1957 provided:

> "No insurance furnished under the provisions of the 1957 Act 'shall be terminated by cancellation or failure to renew by insurer until at least fifteen (15) days after mailing a notice of termination to the named insured . . . *notice* . . . shall be mailed by the insurer to the Commissioner . . . *not later than fifteen (15) days following the effective date of such cancellation.* . . .' G.S. 20-310." *Faizan v. Ins. Co.*, 254 N.C. 47, 118 S.E. 2d 303. (Emphasis added)

Apparently Allstate sought to cancel its policy issued to Mrs. Smith by using forms and following procedures provided in the 1957 Act and discussed by Justice Moore in the *Faizan* case. Likewise, it appears that Allstate overlooked the 1963 Session Laws amendment which became effective October 1, 1963 as Chapter 964:

> "No insurance policy provided in paragraph (d) may be terminated by cancellation or otherwise by the insurer without having given the North Carolina Motor Vehicles Department *notice of cancellation fifteen (15) days prior to effective date of cancellation.*" (Emphasis added)

Plaintiff's Exhibit No. 2, introduced in evidence, carries this information:

> "NOTICE OF TERMINATION (giving name and address of insured, Mrs. Smith, the policy number and the serial number of the

insured vehicle) terminates effective 12-19-64. Date FS-4 prepared Dec. 29, 1964. To be filed with the Department of Motor Vehicles Financial Security Section, Raleigh, North Carolina. R. L. Hargrove, signature of authorized representative."

The reverse side of the notice shows it was received in the office of the Department of Motor Vehicles on January 11, 1965. The plaintiff's evidence not only failed to show prior notice to the Department of Motor Vehicles of the effective date of the attempted cancellation, but it affirmatively shows the notice was prepared on December 29, 1964, claiming cancellation effective "12-19-64". *Griffin v. Indemnity Co.*, 264 N.C. 212, 141 S.E. 2d 300 is not authority contra. *Griffin* was decided subsequent to the 1963 amendment, but the cancellation was effective prior to that date, and was according to the rules in force at the time of cancellation.

The primary purpose of the law requiring compulsory insurance is to furnish at least partial compensation to innocent victims who have suffered injury and damage as a result of the negligent operation of a motor vehicle upon the public highway. Insurance covering liability arising out of the ownership, maintenance and use of a motor vehicle on the highway in the amount required by statute is mandatory. If the policy exceeds the amount required, the policy to the extent of the excess is voluntary. Voluntary insurance is contractual and determines the rights and liabilities of the parties *inter se*. Assigned risk insurance is compulsory both as to the insurer and the insured, made so by law. Such policy must be interpreted in the light of the statutory requirement rather than the agreement or understanding of the parties. The requirements of the statute with respect to cancellation must be observed or the attempt at cancellation fails. Such policies "are generally construed with great liberality to accomplish their purpose." *Ins. Co. v. Roberts*, 261 N.C. 285, 134 S.E. 2d 654; *Wheeler v. O'Connell*, 297 Mass. 549, 9 N.E. 2d 544, 111 A.L.R. 1038.

We conclude the evidence was sufficient to support the finding that Roberts, as plaintiff's agent, received the balance due on the premium and that the plaintiff had not cancelled the policy. The Court entered judgment in part upon the jury's verdict and in part upon the Court's additional findings, both of which were supported by the evidence.

Any judgment against Allstate in favor of Linda Mills Hale may not exceed the maximum coverage provided in the policy.

Affirmed.