WHITELEY, Administrator, etc., Appellant, vs. EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Respondent.

*August 31 — September 18, 1888.*

*Evidence: Presumption of death.*

A person who has not been heard of for seven years is presumed to be dead, but the question when such presumed death occurred is to be determined from all the facts and circumstances in the case, there being no presumption either of life or death at any particular time during the seven years.

APPEAL from the Circuit Court for *Racine* County.

The following statement of the case was prepared by Mr. Justice CASSODAY:

The action was commenced September 10, 1885, upon a policy of insurance issued by the defendant January 9, 1873, in consideration of $99.45 then paid, whereby it assured the life of said Joseph S. Whiteley in the amount of $5,000 for the term of his natural life, and thereby promised and agreed to pay that amount to the said Joseph S. Whiteley, his executors, administrators, or assigns, sixty days after due notice and satisfactory proof of the death during the continuance of the policy; the balance of the year's premium, if any, being first deducted therefrom. By the terms of the policy, the premium was to be paid annually on or before the *3d* day of January in every year during its continuance. January 2, 1874, it was agreed between the parties, as evidenced by the indorsement of the company's actuary upon the policy, in effect, that in lieu of the annual premiums due thereon thereafter there should be substituted quarterly premiums, each of $26.40, payable on each 3d day of January, April, July and October thereafter during the continuance of the policy. The complaint set out the policy and alleged, in effect, the above facts; and

also, that Joseph S. Whiteley had performed all of the conditions of said policy on his part; that while a resident of Racine he died intestate on or about January 16, 1874; that the plaintiff was appointed such administrator, and qualified as such; that he furnished to the defendant the requisite proofs in 1884, and that the defendant had failed and neglected to pay, etc.

The answer, in effect, admits the payment of the first premium; that said Joseph S. Whiteley had paid premiums on the policy to the amount of $125.85; but denies his compliance with the conditions of the policy, and alleges that he entirely failed and neglected to pay each and every of the premiums due thereon April 3, 1874, and quarterly thereafter; and denies that it has information sufficient to form a belief as to whether or not said Joseph S. died intestate on or about January 16, 1874, and therefore denies the same, or that he was then dead; and denies the sufficiency of the proofs; and admits the appointment of the plaintiff as administrator, but denies its validity in the absence of proof of the intestate's death.

On the trial the jury returned a special verdict to the effect (1) that the insured, Joseph S. Whiteley, did not die before April 3, 1874; (2) nor by his own hand; (3) nor by reason of intoxication; (5) that they found for the defendant. From the judgment thereupon entered upon the verdict in favor of the defendant the plaintiff appeals.

For the appellant there was a brief by *Dodge & Fish*, attorneys, and *John T. Fish*, of counsel, and oral argument by *John T. Fish*. To the point that when a person is not heard from for seven years the presumption that he is alive continues until the expiration of that period, and when that period has expired the presumption of law is that the party is dead, but after the seven years there is *no presumption that he died or was alive* at any particular date during the seven years, they cited, besides cases referred to in the

opinion, Best on Presumptive Ev. sec. 140; Greenl. Ev. sec. 41; Taylor on Ev. sec. 157; 2 Whart. Ev. sec. 1276; Stephen on Ev. 99; 2 Redf. on Wills, 2, 3; May on Ins. sec. 585; Bliss on Ins. 326; Bishop on Mar. & Div. 456; *In re Benham's Trust*, L. R. 4 Eq. 415; *Re How*, 1 S. & T. 53; *Thomas v. Thomas*, 2 Drew. & Sm. 298; *Re Benham's Trusts*, 37 L. J. Ch. 265; *Lamb v. Orton*, 29 id. 286; *Re Peck*, 29 L. J. P. 95; *Montgomery v. Bevans*, 1 Sawy. 653; *Stevens v. McNamara*, 36 Me. 176; *Smith v. Knowlton*, 11 N. H. 191; *Flynn v. Coffee*, 12 Allen, 133; *Loring v. Steineman*, 1 Met. 204; *McDowell v. Simpson*, 1 Houst. 467; *Whiting v. Nicholl*, 46 Ill. 230; *Spurr v. Trimble*, 1 A. K. Marsh. 278; *Doe v. Flanagan*, 1 Ga. 538; *Smith v. Smith*, 49 Ala. 156; *Primm v. Stewart*, 7 Tex. 178; *Gibbes v. Vincent*, 11 Rich. 323; *Stouvenel v. Stephens*, 2 Daly, 319. In *Naisor v. Brockaway*, Rich. Eq. Cas. 449, it was held that when a person was absent and unheard from for seven years, the presumption is that he died at the commencement of that period.

For the respondent there was a brief by *Quarles, Spence & Dyer*, and oral argument by *J. V. Quarles*. To the point that the court properly instructed the jury that the presumption was that Joseph S. Whiteley was alive on the 3d of April, 1874, they cited Lawson on Presumptive Ev. 192; *Hayes v. Berwick*, 5 Am. Dec. 727; *Clark v. Canfield*, 15 N. J. Eq. 121; *Burr v. Sim*, 33 Am. Dec. 52; *O'Gara v. Eisenlohr*, 38 N. Y. 299; *Bailey v. Bailey*, 36 Mich. 184; *Wilson v. Hodges*, 2 East, 312; *Hoyt v. Newbold*, 46 Am. Rep. 761, note; *Sensenderfer v. Pacific Mut. L. Ins. Co.* 19 Fed. Rep. 68; *Whiting v. Nicholl*, 46 Ill. 230; *Shown v. McMackin*, 42 Am. Rep. 680–684; *Ashbury v. Sanders*, 8 Cal. 62; *Miller v. Beates*, 3 Serg. & R. 490; *Cowan v. Lindsay*, 30 Wis. 589.

CASSODAY, J.   About January 4, 1874, Joseph S. Whiteley started from his employer's at Racine, on a trip as trav-

eling salesman of boots and shoes, with two grip-sacks filled with samples. He then had with him $60 in cash and three checks of $30 each, payable to his order and signed by his employer, to be used in paying his expenses. He went to Chicago, where he left both of his grip-sacks, and negotiated one of the checks. Afterwards he went to St. Louis, Mo., where he registered at an hotel January 15, 1874, and remained there until the next day. While there he indorsed and pledged one of the checks for board, but left January 16, 1874, and before the check had been collected. No trace of him has since ever been found, notwithstanding diligent search for him appears to have been made, not only in St. Louis, but in other places. At the time of his disappearance he was twenty-seven years of age, had never been married, and had for some time been apparently affected by a disappointment in a love affair. The other check was never presented for payment, nor heard of. The answer admits that premiums on the policy to the amount of $125.85 had been paid by Joseph S. Whiteley. The next premium that became due by the terms of the contract of insurance, as modified, was the sum of $26.40, payable April 3, 1874. This suit was not commenced until more than eleven years after such disappearance. We only state a few of the facts and circumstances attending the disappearance of the insured, and those only in order to intelligently consider some of the questions of law presented by the record.

The court, among other things, charged the jury, in effect, that such unexplained absence of Joseph S. Whiteley, without being heard of for more than seven years, raised a presumption that he was dead; but that it raised no presumption that he died at any particular time during the seven years, nor helped to fix the exact time of death within that seven years; that the plaintiff must prove by a preponderance of the evidence that he died before April 3,

1874; that such fact need not necessarily be established by direct evidence, but might be established by circumstantial evidence,— by inferences from the facts and circumstances surrounding his disappearance.    All this seems to be in accordance with well-settled rules of law.    It is, however, strenuously contended that other portions of the charge were in direct conflict with it, and such as to preclude any recovery.    Such other portions of the charge were to the effect that "the most important question in the case" was "whether Joseph S. Whiteley died before April 3, 1874;" that "when a person is shown to have been living at a certain time, the law presumes the continuance of his life until this presumption is overcome either by proof of his death or by a presumption of death which arises after an unexplained absence of seven years.    *Therefore, in this case,* the question being whether Joseph S. Whiteley was alive April 3, 1874, he having been seen on the 16th day of January, 1874, alive and apparently well, *the presumption is that he was alive on the 3d day of April, 1874,* and this presumption will control until it is overthrown by competent proof and the fact is established by evidence that he died at an earlier day."

Had the action been commenced and tried prior to the expiration of the seven years following such disappearance, a presumption of such continuance of life might properly have been indulged, for then it would have been incumbent upon the plaintiff to prove either by direct evidence or by facts and circumstances (1) that he was dead, and (2) that such death occurred prior to April 3, 1874, or, in other words, during the life of the policy.    But by delaying the action and trial until after such expiration of the seven years, such proof of death was dispensed with by such presumption of the fact; and hence the only remaining fact to be established by the evidence was the time, or about the time, when such death occurred.    In other words,

were the facts and circumstances in evidence sufficient to support a finding by the jury that he died before April 3, 1874? The trial court must have been impressed with the sufficiency of such evidence, or that question would not have been submitted to the jury.

It appears from the record that all such facts and circumstances so proved transpired before April 3, 1874; and hence, if such facts and circumstances tended to fix the time of death at all, they tended to fix it prior to that date. In other words, the record reveals no facts and circumstances as having transpired after that date tending to fix some subsequent time during the seven years as the probable period of his death. If the trial court was justified in saying that "in this case . . . the presumption is that he was alive on the 3d day of April, 1874," then it follows as a logical sequence that such presumption continued until the expiration of the last day of the seven years; or, in other words, that the death occurred at the end of the seven years. "Such a rule," says DENMAN, C. J., speaking for the court of King's Bench, "would, in the very great majority of cases, nay, in almost every case, cause the fact to be found against the truth, and, as the rule would be applicable to all cases in which the time of death became material, would in many be productive of much inconvenience and injustice." *Doe v. Nepean*, 5 Barn. & Adol. 86. It is there said, in effect, that though such absence for seven years "is sufficient evidence to warrant a presumption of fact that the party was dead at the end of seven years, it certainly raises no inference as to the exact time of the death, and still less that such death took place at the end of seven years." This was approved three years afterwards by the same chief justice, speaking for the court of Exchequer, in an elaborate opinion, from which we quote: "Now, when nothing is heard of a person for seven years, it is obviously a matter of complete uncertainty at what point of

time in those seven years he died. Of all points of time the last day is the most improbable and most inconsistent with the ground of presuming the fact of death. . . . If you assume that he was alive on the last day but one of the seven years, then there is nothing extraordinary in his not having been heard of on the last day; and the previous extraordinary lapse of time, during which he was not heard of, has become immaterial by reason of the assumption that he was living so lately. The presumption of the fact of death seems, therefore, to lead to the conclusion that the death took place some considerable time *before* the expiration of the seven years. . . . We adopt the doctrine of the court of King's Bench, that the presumption of law relates only to the fact of death, *and that the time of death, whenever it is material, must be a subject of distinct proof.*" *Nepean v. Doe*, 2 Mees. & W. 913.

These and several other English cases were reviewed in *Re Phene's Trusts*, L. R. 5 Ch. App. Cas. 139, where it was held that, "if a person has not been heard of for seven years there is a presumption of law that he is dead; but at what time within that period he died *is not a matter of presumption but of evidence;* and the *onus* of proving that the death took place at any particular time within the seven years lies upon the person who claims a right to the establishment of which that fact is essential. *There is no presumption of law in favor of the continuance of life,* though an inference of fact may legitimately be drawn that a person alive and in health on a certain day was alive a short time afterwards." To the same effect: *In re Lewes' Trusts,* L. R. 6 Ch. App. Cas. 356; *Hickman v. Upsall,* L. R. 20 Eq. Cas. 136, 13 Eng. (Moak), 672. The rules thus stated are well illustrated in a very recent English case (*Rhodes v. Rhodes,* L. R. 36 Ch. Div. 586), where one Alfred Rhodes emigrated to Australia in 1850. He was never heard of by any member of his family after 1873, when he was still unmarried and

without issue.   After the expiration of seven years from the time he was last heard of, an administrator of his estate was appointed, who, as such, became possessed of a fund to which Alfred was entitled under the will of his father. Upon inquiry it was, in effect, found that he must be presumed to be dead at the end of the seven years; "that there was no evidence to show that he died at any date before that year;" that if he was held to have died a bachelor when he was last heard of, then his mother and two of his brothers (who died soon after) would have been his next of kin, and entitled to the fund; but that, if he was presumed to have died a bachelor at the end of the seven years, then his next of kin would have been the six children of a brother; and it was "held that neither class of next of kin had made out a title to the fund, but that the case must go back .  .  .  for further inquiry."

The rules thus indicated are in harmony with some of the best-considered adjudications in this country.  We cite a few, merely as illustrative of the reasoning in support of such rules: *Davie v. Briggs*, 97 U. S. 628; *State ex rel. Spencer v. Moore*, 11 Ired. Law, 160, 53 Am. Dec. 401; *Spencer v. Roper*, 13 Ired. Law, 333; *Hancock v. American L. Ins. Co.* 62 Mo. 26; *Tisdale v. Connecticut Mut. L. Ins. Co.* 26 Iowa, 170, 28 Iowa, 12; *McCartee v. Camel*, 1 Barb. Ch. 455; *Ryan v. Tudor*, 31 Kan. 366; *Williams v. Williams*, 63 Wis. 62.   Thus, Mr. Justice HARLAN, speaking for the supreme court of the United States, in the case cited, quotes from a treatise on the law of evidence, what he states to be in harmony with the law of the English courts and the preponderance of authority in this country, this sentence: that, "although a person who has not been heard of for seven years is presumed to be dead, the law raises no presumption as to the time of his death; and, therefore, if any one has to establish the precise period during those seven years at which such person died, he must do so by evidence, and can neither

rely, on the one hand, on the presumption of death, nor, on the other, *upon the presumption of the continuance of life.*"

Some of the cases speak of a presumption of life or death at some particular time prior to the expiration of such seven years; but this, it is believed, has generally been said in cases where the question arose prior to the termination of such period, or where the statement is made by way of characterizing the evidence tending to thus fix the particular time; simply meaning thereby that such particular t me may have been inferred or found by the jury from the facts and circumstances in evidence in the particular case. There are cases which seem to hold that such presumption of death from such mere unexplained absence fixes the time of death at the end of the seven years. Such cases, it is believed, usually treat such presumption as a rigid or conclusive presumption of law, as the trial court in one part of the charge here seems to have treated it; but most of the authorities seem to regard the presumption as a mere *prima facie* presumption of fact, which may be overcome by evidence. In civil actions, courts and juries are frequently called upon to determine facts from mere probabilities disclosed by the evidence; and yet, in such cases, there is a possibility of subsequently discovering the facts found to have been otherwise.

We must hold that it was error for the trial court to charge the jury, in effect, that in this case the presumption was that Joseph S. Whiteley continued to live until the expiration of the seven years, or that he was alive on April 3, 1874, and that such presumption would control until overthrown by competent proof and the fact established by evidence that he died at an earlier date. That was an entirely different thing than to say that the burden of fixing the time was on the plaintiff. In the one case the parties start in the trial with the two ends of the scale equally balanced; in the other case the one end is borne down by an oppres-

sive legal presumption. Of course, the burden was on the plaintiff to prove that the death thus presumed occurred during the life of the policy; but such mere absence, unaccounted for, raised no presumption that it occurred during that time, nor was there any presumption, from such mere absence, that it did not occur during that time. It was simply for the jury to determine, from the facts and circumstances in the case, when such presumed death did occur. This, of course, is on the theory that there was evidence tending to prove that it occurred during the life of the policy.

There are other errors complained of, but as they are not likely to be repeated it becomes unnecessary to consider them here.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.

