## Glasscock, et al. v. Weare, Executor, et al.

(Decided October 28, 1921.)

### Appeal from Fleming Circuit Court.

1. Death—Presumptions.—One who resides in this state and departs therefrom and does not return for seven successive years, and proof is not made, that he was alive within that time, is presumed to be dead, but, there is no presumption created by section 1639, Ky. Stats., as to what particular time, within that period, that he died.

2. Death—Presumption from Absence—Burden.—If the time of one's death, who is presumed to be dead on account of seven successive years' absence, becomes material, the burden rests upon the one asserting that he died, at a particular time within that period, to show it, by evidence.

3. Death—Presumptions from Absence.—When one was alive when last seen, he will be presumed to continue to live until evidence of his death is offered, or until the presumption of the continuance of life is overthrown by the presumption of his death from seven years' absence under the statute.

4. Death—Presumptions—Evidence.—The presumption of continuance of life may be rebutted by evidence, either direct or circumstantial, and if circumstances are relied upon to prove one's death, at a particular time, they must needs be of such character as to induce the belief that it was more probable that he died, than that he survived.

5. Death—Presumptions from Absence.—The presumption of death arising from seven successive years' absence from the state, without being known to be alive, within that period, is not conclusive, but may be rebutted by evidence.

JOHN P. McCARTNEY and B. S. GRANNIS for appellants.

O. R. BRIGHT for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE HURT—Reversing.

This appeal affects the Weare family, whose names are Jared, Jerome, Jahaza, Jaakim, Jaffa, Jacova, Jabus and Jaza Weare. In the year 1909, Jared Weare died intestate. His personal effects were reduced to money and distributed among his heirs, except a portion inherited by his brother, Jaza Weare, which amounted to $2,172.75, was left in the hands of the administrator, Jabus Weare. His real estate was sold, the proceeds collected and distributed, except the portion due Jaza Weare, which amounted to the sum of $1,861.94, and this

remained in the hands of the master commissioner of the court. These sums due Jaza Weare were not paid over to him, because he was out of the country, and his whereabouts was unknown to his relatives, and after about two years, when he was found, he made no application for the funds.

In January, 1917, Jacova Whaley, a sister of Jaza Weare died intestate, and by her will devised the greater part of her estate to her brothers, Jabus Weare, Jaffa Weare and Jaza Weare, an equal sum to each, but provided that if Jaza Weare died before her death that the portion devised to him should go to Jabus Weare and Jaffa Weare. Jabus Weare was nominated as executor of her will, and, in accordance with its directions, converted the estate into money, and paid to each devisee the sum devised to him, but retained the portion devised to Jaza Weare on account of his absence and the want of knowledge of his whereabouts. The portion devised to Jaza Weare, and which was in the hands of Jabus Weare, as executor of Jacova Whaley, undistributed was $2,459.24. The last information that Jaza Weare's relatives had of him was to the effect that he departed from Little Rock, Arkansas, in November, 1911, for San Francisco, California. On December 3, 1918, after having made extensive inquiry for Jaza Weare, throughout several states, and of all persons, who, according to the information had by his relatives, would be likely to have any knowledge of him, and being unable to find him or to obtain any recent information in regard to him, the master commissioner, Jabus Weare, as the executor of Jacova Whaley, and as administrator of Jared Weare, and in his own right, together with Jaffa Weare, who joined in the action, sought to have Jaza Weare adjudged to be dead, and a distribution of the funds, above named, made, in accordance with the laws of descent and distribution, and the provisions of the will of Jacova Whaley. The appellants, Anabel Glasscock and Ida Avery, who were nieces of Jaza Weare, being the daughters of a deceased brother, Jaakim Weare, were made parties to the suit, as well as Jaza Weare, who was proceeded against by warning order. It was satisfactorily shown that Jaza Weare was born, reared and resided in Fleming county, in this state, from which he departed in 1882, and never returned; he had no home after that time; and had not been heard of or known to be living since the month of November, 1911, for a period of over seven successive years,

although diligent inquiry was made for him at the place, where he was last known to be alive, as well as in many other states. On the 7th day of November, 1919, the court adjudged him to be dead, for the purposes sought, and directed his estate to be distributed, and there is no appeal from that judgment.

No controversy grows out of the distribution of the funds in the hands of Jabus Weare, as administrator of Jared Weare, nor of those in the hands of the master commissioner, but the controversy has arisen from the distribution of the portion of the estate of Jacova Whaley, which she devised to Jaza Weare, but with the provision that if he failed to outlive her, to Jabus Weare and Jaffa Weare. The appellants, as the daughters of a brother who is now dead, assert a claim to a share, upon the contention that Jaza Weare should be held to have died, at the end of the seven years, after he was last known to be alive, and this would be a judgment to the effect that he outlived Jacova Whaley, and having died intestate, the portion of the estate devised to him by Jacova Whaley would pass to his heirs according to the laws of descent. Upon the other hand, Jabus and Jaffa Weare contend that he died during the lifetime of Jacova Whaley, and the portion intended for him, under her will, passed to them under the terms of the will. The court adjudged that Jaza Weare died during the lifetime of the testatrix, and that Jabus and Jaffa Weare were entitled to the portion as devisees of the will. Anabel Glasscock and Ida Avery have appealed.

Section 1639, Ky. Stats., provides as follows:

"If any person who shall have resided in this state, go from and do not return to this state for seven successive years, he shall be presumed to be dead in any case wherein his death shall come in question, unless proof be made that he was alive within that time."

It was upon the authority of this statute that the court adjudged Jaza Weare to be dead. It will be observed that under the authority of the statute when the circumstances therein enumerated occur with any person, he will be presumed to be dead, and to overcome the presumption, it is necessary to show by evidence that such person was alive within that period. The statute creates a presumption which is enforced as a rule of public policy to the end that the settlement of estates may be facilitated, in that there may be a basis for determining that a person, who has departed from this state and

has not returned for seven successive years, and can not be proven to have been alive during that time, is dead, for otherwise it would probably be impossible to show by evidence whether he was dead or living, and thus prolong the time for the distribution and devolution of property, to a period beyond the expectancy of human life, because of the impossibility of proving that a death has occurred, when it, in fact, has probably occurred many years ago. While the presumption of death must be indulged after the expiration of seven successive years of absence, and can not sooner be indulged, no presumption arises from the rule established by this statute as to what particular time, within the period, the individual died, and hence when the particular time of the death becomes material, one may show by evidence the particular time when death occurred. The presumption goes only to the extent that the person is dead, on account of that lapse of time, and it will not be presumed that he died at any particular time within the period. If it is material for one to establish the exact time during those seven years when the death occurred, he can do so, but he must do so by evidence. Kendrick v. Grand Lodge, etc., 8 K. L. R. 149; Dailey v. Briggs, 97 U. S. 628; Spahr v. Mutual Life Ins. Co., 98 Minn. 471; Bradley v. Modern Woodmen, 124 S. W. (Mo. App.) 69; Re Allen, 5 N. Y. Supp. 566; Spencer v. Roper, 35 N. C. 333; Evans v. Stewart, 81 Va. 724; Whitley v. Equitable Life Assurance Society, 72 Wis. 170. The statute not creating any presumption as to the time of death within the seven year period, it does not interfere with the presumption that when a thing is proven to exist, it will be presumed to continue to exist until the contrary is shown by evidence, or until a presumption in conflict with it arises and overcomes it. Hence it would logically follow that when one is alive upon the last occasion when he was seen, it, is presumed in the absence of any evidence of his having died, that he continued to live until the expiration of the seven years' absence, when the presumption of his death would arise. It is not necessary that the proof of his death should consist of direct evidence to that effect, but, it may be shown by proof of his age, his physical condition and any other circumstances which would tend to make one believe it more probable that he had died, than that he had survived. Reedy v. Millegen, 155 Ill. 363; Hancock v. American Ins. Co., 62 Mo. 26; Clark v. Canfield, 15 N. J. Eq. 119; Burr v. Sim, 33 Amer. Dec. 50; Schaub v. Griffin, 84

Md. 557; Butler v. Supreme Court, etc., 101 Pac. 481; Spur v. Trimble, 1 A. K. M. 204; Bailey v. Bailey, 36 Mich. 281; Chapman v. Kullman, 191 Mo. 237.

The portion devised to Jaza Weare would not pass to Jabus and Jaffa Weare, unless Jaza died before the death of the testatrix, Jacova Whaley, and to entitle them to recover, the particular time of his death becomes material, and unless it is shown by evidence that he died prior to the death of the testatrix, the presumption must be indulged that he continued to live until the presumption arising from his seven years' absence destroys the presumption of the continuance of his life, and this presumption arising from his absence did not arise until about one year after the death of the testatrix. He was last seen alive in November, 1911, at which time he was fifty-eight years of age, and there was nothing in his age or physical condition to warrant the belief that he died within the next five years. The burden rests upon those who contend that he died previous to January, 1917, to establish such fact. Of course, the evidence necessary to establish such fact may be proof of circumstances which must be shown to be such that it was more probable that he died within the next five years, than that he survived. There is no pretense that there is any evidence of a direct character of his death, but it is insisted that the circumstances are such as to lead to the belief of his death prior to January, 1917, when Jacova Whaley died. The circumstances relied upon are that in July, 1911, Jaffa Weare visited him at Malvern, Arkansas, and informed him of the funds awaiting him in the hands of Jabus Weare and the commissioner in Fleming county, Kentucky, and he said that he would return to Kentucky in the autumn of that year, and receive the funds, and that he did not return and did not thereafter communicate by letter or otherwise with any of his relatives, and that in the year 1918 a thorough search was made for him in California, as well as inquiry was made of every person in several states, whom his relatives had reason to believe had any knowledge of him, and that the search and inquiry were unavailing, and no person was found or communicated with, who had any recent knowledge of him. This search was actively made, however, after the seven successive years had expired from the time he was seen alive. Ordinarily the proof of such circumstances would tend to induce the belief that the person was dead, but when considered with the other facts in proof, they

lose their convincing effect. Among those other facts are that in January, 1917, he was sixty-three years of age, and his brother Jabus was seventy-seven years of age, and his brother Jaffa is now seventy-three years of age and both of whom are still alive. He departed from Fleming county, where he was reared, in 1882, at twenty-nine years of age and never returned. His mother died in 1885, and while his brother Jaffa returned from Missouri, at that time of family affliction, to visit the family and possibly to attend the obsequies, Jaza did not return. Within a few years after his departure from Kentucky, he had roamed over Kansas, Oklahoma, Missouri, Alabama, Tennessee, Arkansas and probably other states, and seems never to have had any fixed habitation. In the year 1909, when his brother Jared died, his relatives in Kentucky and his brother who resided in Missouri at that time, had lost all trace of him, and he was only found by the accidental receipt of a letter which an acquaintance at Pittsburg, Pa., addressed to him, thinking that he was at Flemingsburg, Ky. The relatives, after two years, learned that he was probably in Arkansas. The information was conveyed to the brother in Missouri, who went to Arkansas in search of him, and found him at Malvern. There the brother learned that Jaza had known of his brother Jared's death for more than two years, during which time he had not communicated with any of his relatives, nor made any effort to secure any portion of the estate, nor inquiry in regard to it, which he must have known that he inherited, as Jared was childless. He was engaged at Malvern in assisting in the erection of a telephone line. Although he said to his brother that he would come to Kentucky some time in the autumn for the money, he did not do so, but instead went to Hot Springs, Arkansas, for a short time and then returned to Little Rock, in the same state, where he secured the money on seventeen checks, which he had, procured a ticket from the railroad for San Francisco, California, and departed for that place. That was the last seen or heard of him, as developed in this record. He could have easily obtained the money in the hands of his brother Jabus and the commissioner, by communicating with them by mail, but he did not even put himself to that small trouble to do so. He was indifferent in regard to the money, or else for some reason did not desire it. He did not communicate by mail, after he was seen to leave Little Rock

for San Francisco, with any of his relatives, that is with his sister, Jacova, or with his brother, Jabus, nor with his brother, Jaffa, but he had never done so theretofore. Since 1882, he had not written a letter to Jabus or Jacova. He had not written to Jaffa in Missouri and Arizona for many years. The failure to find any trace of him in California, in 1918, is not such a circumstance as to lead to the belief of his death, previous to 1917, or even his death at all. A wanderer, if he kept up his habits, he would not have probably remained in San Francisco or California but a short time, when he went there in 1911. Hence we conclude that the circumstances, in evidence offered to prove his death, previous to the death of Jacova, in January, 1917, or in fact that he has ever died at all, are not sufficient to reasonably induce the belief that it was more probable that he died during that time than that he survived, and the presumption will then have to be indulged that he continued to live until the end of the seven year period, when the presumption of life continuance was overturned by the presumption created by the statute.

The judgment, to the the effect that he died previous to the death of Jacova Whaley, is, therefore, reversed and the cause is remanded for proceedings not inconsistent with this opinion.