ROBERT D. STEWART, ADMINISTRATOR C.T.A. OF THE ESTATE OF WORTH STEWART, DECEASED v. HARRIET S. ROGERS.

(Filed 20 November 1963.)

**1. Death § 2—**

The continuous and unexplained absence of a person from his domicile for a period of seven years, without being heard from by those who would naturally expect to hear from him if he were alive, raises a presumption that such person is dead, and the period at which it is presumed that life ceased may be shortened by proof of facts and circumstances from which a jury may reasonably infer, by the test of reason and experience, that death ensued at an earlier date.

**2. Same; Marriage § 2— Evidence held to support finding that missing person was dead some three years after disappearance.**

Evidence tending to show that a person alone in a flight on a return trip to his home in this State was not qualified or licensed to pilot a plane in bad weather, that there was a storm in his path of flight, that his intended path of flight was along the coast line for a considerable distance, that the wind was of such velocity and direction as to blow him out to sea, that he did not land at or communicate with any airport within the flying range of his plane, that thorough and exhaustive searches were made for him along the line of flight, etc., and that he had not been heard from since he began his journey, *is held* sufficient to sustain a finding that such person was dead at the time of the remarriage of his widow more than three years after his disappearance.

**3. Trial § 57—**

In a trial by the court under agreement of the parties, the findings of the court are as conclusive as the verdict of a jury when the findings are supported by competent evidence.

**4. Marriage § 2—**

A second or subsequent marriage is presumed legal until the contrary is proved, and the burden is upon the person asserting a property right based upon the invalidity of the second marriage to prove its invalidity.

APPEAL by plaintiff from *Mallard, J.,* 12 August 1963 Schedule "C" Session of MECKLENBURG.

It was agreed and stipulated by the parties to this action that the trial judge should conduct the trial without a jury, hear the evidence, and render judgment upon his findings of fact and conclusions of law as authorized by G.S. 1-185.

The defendant and Worth Stewart were married on 11 September 1932. Thereafter they lived together as husband and wife until 26 February 1953.

There were two children born of the marriage between the defendant and Worth Stewart. Both of these children, Robert D. Stewart, the plaintiff, and Gabe S. Stewart, are now living and are *sui juris.*

During the period of this marriage, Worth Stewart accumulated substantial properties, including cash, stocks in closely held theatre corporations, partnership interests in theatre companies, real estate held by the entireties with the defendant, and policies of insurance upon his life payable to the defendant as named beneficiary.

All the evidence tends to show that Worth Stewart had no marital, financial, or health problems of any consequence. He disappeared under the circumstances hereinafter set out on 26 February 1953. The evidence raises no inference or suggestion of any motive on the part of Worth Stewart to leave his family and business. Although he had

over $25,000 in his personal checking account, he had no more than $300.00 in cash when he disappeared. Furthermore, he never drew any checks on this account after his disappearance.

Worth Stewart owned a single-engine Beech Bonanza airplane which he sometimes flew himself, although he was neither qualified nor licensed to fly in bad weather, and his plane was not equipped for operating in instrument-weather conditions.

On 21 February 1953, Worth Stewart departed from Charlotte, North Carolina, with two companions aboard this plane, with the intention of flying to an airfield near Fort Pierce, Florida. On the way down, however, they encountered bad weather and when it became apparent that Stewart was having considerable difficulty in navigating and handling the aircraft under these conditions, his friends prevailed upon him to land at Jacksonville, Florida, and from there they proceeded to their destination by commercial airliner.

After several days of fishing, Worth Stewart announced his intention to return to his family and business in Charlotte, North Carolina. He had his plane flown to him from Jacksonville, and on the return trip he stopped over at Jacksonville to drop off the pilot who had flown the plane to him. He then left Jacksonville, alone, at approximately 11:40 a.m., 26 February 1953. Although the weather was clear at Jacksonville, there was a broad arc of turbulent weather extending across his intended path of flight. Nothing has been heard of Worth Stewart since he left Jacksonville. Extensive air and ground search along his intended path of flight turned up no trace of him or his plane. Civil Air Patrol units in North Carolina, South Carolina, Georgia and Florida, including units from the United States Marine Air Wing, the United States Navy, and Air Rescue Service from Elgin Air Force Base in Florida, flew 380 search missions in an effort to locate Worth Stewart and his plane. The search began on 27 February 1953 and continued for eleven days. Likewise, all airports were checked within the possible flying range of the Beech Bonanza Aircraft piloted by Stewart, and it was determined that he never landed at or contacted any of these airports.

The defendant managed Worth Stewart's property and business as his guardian until 29 May 1956. On that date she was appointed collector of his estate and continued to manage his affairs until 9 September 1960.

On 30 May 1956, the defendant and Thomas S. Rogers were married. On 15 September 1960, the will of Worth Stewart was admitted to probate after it had been judicially determined that Worth Stewart was dead. The plaintiff, son of Worth Stewart, was appointed administra-

tor c.t.a. The defendant dissented from the will on 31 October 1960. Subsequently, a partial distribution was made to the defendant with the express understanding that it would be returned to the estate if defendant had forfeited her right to share in the estate by her remarriage.

Plaintiff, as administrator, brings this action to recover such partial distribution on the ground that the defendant's remarriage before Worth Stewart was declared dead is equivalent to an elopement with an adulterer and bars the defendant's right to share in the estate.

From the foregoing evidence the court found as a fact, among other things, that "There is no evidence that, at the time of the defendant's marriage to Thomas S. Rogers on May 30, 1956, Worth Stewart was alive, all of the circumstances surrounding his disappearance indicating that he did not continue in life to that date, and for the purpose of resolving the issues before the court in this case, he is considered as having died prior to May 30, 1956."

The court below concluded as a matter of law that, "The defendant was lawfully married to and residing with Worth Stewart as his wife at the time of his disappearance, and the defendant has never abandoned the said Worth Stewart, has never refused to live with him, has never been divorced from him, and has never eloped or committed any other act which would, under any law of this State, bar her from sharing in the estate of Worth Stewart as his surviving spouse."

The court further concluded that, "The defendant's marriage to Thomas S. Rogers on May 30, 1956, was lawful, and the defendant has not forfeited, either by said marriage or by living with Thomas S. Rogers as his wife since said marriage, her right to dissent from the will of Worth Stewart, to share in the distribution of the estate of Worth Stewart as his surviving spouse * * *."

Upon the facts found and the conclusions of law drawn therefrom, the court below ordered, adjudged and decreed that (1) the plaintiff take nothing of the defendant in this action; (2) that the defendant is the owner and entitled to the proceeds of the policies of insurance described in the complaint; (3) that the defendant as surviving tenant by the entirety is the owner of the real estate described in the complaint; (4) that the defendant is entitled to share, as dissenting widow, in the estate of Worth Stewart; and (5) that the defendant recover her costs in this action.

The plaintiff appeals, assigning error.

*Richard A. Cohan for plaintiff appellant.*
*Blakeney, Alexander & Machen for defendant appellee.*

DENNY, C.J.   The determinative question on this appeal is whether or not the marriage of the defendant to Thomas S. Rogers on 30 May 1956, is a valid marriage.

In the case of *Spencer v. Moore*, 33 N.C. 160, Ruffin, C.J., speaking for the Court, said: "The rule as to the presumption of death is that it arises from the absence of the person from his domicile without being heard of for seven years. But it seems rather to be the current of the authorities that the presumption is only that the person is then dead, namely, at the end of seven years; but that the presumption does not extend to the death having occurred at the end or any other particular time within that period, and leaves it to be judged of as a question of fact, according to the circumstances, which may tend to satisfy the mind that it was at an earlier or later day."

In *Spencer v. Roper*, 35 N.C. 333, the same Court adopted and quoted the identical language set out above, and added: "So much of the opinion in the above case is transferred to this, because what was then but intimated we now express as our confirmed opinion. The cases governing this were then examined and referred to. We have again examined them, and after full deliberation see no cause to alter our opinion." *Bragaw v. Supreme Lodge*, 124 N.C. 154, 32 S.E. 544; *Beard v. Sovereign Lodge*, 184 N.C. 154, 113 S.E. 661. The cases of *Spencer v. Moore, supra*, and *Spencer v. Roper, supra*, have been cited with approval in the following jurisdictions. *Davie v. Briggs*, 97 U.S. 628, 24 L. Ed. 1086; *Whiteley v. Equitable Life Assur. Soc.*, 72 Wis. 170, 39 N.W. 369; *Lukens v. Camden Trust Co.*, 2 N.J. Super. 214, 62 A 2d 886; *Solomon v. Redona*, 52 Cal. App. 300, 198 P. 643; *Glassock v. Weare*, 192 Ky. 654, 234 S.W. 216; *Tobin v. United States Railroad Retirement Board* (U.S.C.A. 6th), 286 F. 2d 480.

In *Trust Co. v. Deal*, 227 N.C. 691, 44 S.E. 2d 73, this Court said: "When in a judicial proceeding it is necessary to ascertain as a material fact whether a person is living or dead, the fact of death may be established by circumstantial evidence.

" 'The absence of a person from his domicile, without being heard from by those who would be expected to hear from him if living, raises a presumption of his death—i.e., that he is dead at the end of seven years.' *Carter v. Lilley*, ante, 435, and cited cases.

"The mere absence of a person from a place where his relatives reside but which is not his own place of residence, without being heard from by them for a period of seven years, is not sufficient to create a presumption. 25 C.J.S., 1058-9. It is the proof of the continued and unexplained absence of a person from his home or place of residence without any intelligence from or concerning him for the required period

which gives rise to the application of the rule. 16 A.J., 19; 25 C.J.S., 1057.

"This rule of evidence is a procedural expedient sired by necessity and is based on the generally accepted fact that a normal person will not, if alive, remain from his home for seven years without communicating with family or friends. 16 A.J., 19.

"The strength of this presumption varies with the circumstances; its force depends on the character of the person, his attachment to his home, and the circumstances under which he left. 25 C.J.S., 1056, 1061; 16 A.J., 21."

Likewise, in *Fidelity Mutual Life Association v. Mettler*, 185 U.S. 308, 46 L. Ed. 922, the Supreme Court of the United States approved the following instruction to the jury: "While death may be presumed from the absence, for seven years, of one not heard from, where news from him, if living, would probably have been had, *yet this period of seven years during which the presumption of continued life runs, and at the end of which it is presumed that life ceases, may be shortened by proof of such facts and circumstances connected with the disappearance of the person whose life is the subject of inquiry*, and circumstances connected with his habits and customs of life, as, submitted to the test of reason and experience, would show to your satisfaction by a preponderance of the evidence that the person was dead." (Emphasis added.)

The evidence adduced in the trial below shows a complete lack of motive on the part of Worth Stewart to disappear and abandon his business and family.

We hold that the evidence was sufficient to have supported a finding that Worth Stewart died soon after he left Jacksonville, Florida, on 26 February 1953, at approximately 11:40 a.m. He flew a small plane into weather conditions constituting a hazard to a pilot of his experience flying a plane equipped as his was; his intended path of flight would have carried him along the coast line for a considerable distance, at a time when the wind was of such velocity and direction as to blow him out to sea; and it has been determined that he did not land at or communicate with any airport within the flying range of his plane. The search for him was thorough and exhaustive. From these facts, the trial judge found that Worth Stewart was dead on 30 May 1956, over three years after his disappearance.

Where facts are found by the court, if supported by competent evidence, such findings are as conclusive as the verdict of a jury. *Goldsboro v. R.R.*, 246 N.C. 101, 97 S.E. 2d 486, and cited cases.

There is another presumption involved in this case. This is the presumption that a second marriage is valid. There can be no question about the performance of a second marriage ceremony in the instant case. The plaintiff alleged in paragraph 5 of his complaint, "That, * * * the defendant participated in a purported marriage ceremony with Thomas S. Rogers on the 30th day of May, 1956, and has lived as wife with the said Thomas S. Rogers since that date." The defendant in answering this paragraph of plaintiff's complaint said, "That it is admitted that the defendant was married to Thomas S. Rogers on the 30th day of May, 1956, and since that time has lived with him as his wife."

In *Kearney v. Thomas,* 225 N.C. 156, 33 S.E. 2d 871, the plaintiff, as in the instant case, was seeking to have a second marriage declared null and void. This Court said: "We are of opinion that when the plaintiff attempts to assert a property right which is dependent upon the invalidity of a marriage, he must, as the attacking party, make good his cause by proof. Upon proof that a marriage ceremony took place, it will be presumed that it was legally performed and resulted in a valid marriage. Chamberlayne, Trial Evidence, p. 432, sec. 475. * * *

"We find in *Chamberlayne's Trial Evidence, supra,* p. 376, sec. 416: 'A second or subsequent marriage is presumed legal until the contrary be proved, and he who asserts its illegality must prove it. In such case the presumption of innocence and morality prevail over the presumption of the continuance of the first or former marriage.' This statement is so abundantly supported by well considered cases, so consonant with reason, and so consistent with analogous practices, as to justify its adoption. See, also, Jones on Evidence, Civil Cases, sec. 14, and cases cited."

The appellant contends that the case of *Williams v. Williams,* 254 N.C. 729, 120 S.E. 2d 68, has eliminated the *Kearney* case as authority for the defendant's position. We do not so hold.

We hold that the findings of fact by the trial judge in the hearing below are supported by competent evidence. Furthermore, there was no evidence offered by the plaintiff tending to show that the marriage of Thomas S. Rogers on 30 May 1956, is invalid.

The judgment of the court below is, in all respects,

Affirmed.