WILLIAM GRAY HARRELSON, BY HIS NEXT FRIEND, CLYDE C. RAN-
DOLPH, JR., v. STATE FARM MUTUAL AUTOMOBILE INSURANCE
COMPANY

AND

JOHN W. HARRELSON v. STATE FARM MUTUAL AUTOMOBILE
INSURANCE COMPANY.

(Filed 2 February, 1968.)

**1. Appeal and Error § 57—**

An exception to a finding of fact not supported by evidence must be
sustained.

**2. Same—**

Upon appeal, the reviewing court may refer to the evidence in the record
to interpret the findings of fact of the trial court.

**3. Same—**

. The trial court's findings of fact supported by competent evidence are
conclusive upon appeal, but the trial court's conclusions drawn from the
. findings are subject to review.

**4. Insurance § 3—**

An insurance policy is a contract between the insurer and the insured,
and its provisions will govern the rights of the parties unless the pro-
visions are in conflict with the law of the State.

**5. Insurance § 3—**

Statutory provisions applicable to a policy of insurance are to be read
into the policy as if written therein.

**6. Insurance § 53.2—**

The provisions of the Motor Vehicle Financial Responsibility Act of
1957 must be read into a policy issued pursuant to the Assigned Risk Plan
and construed liberally to effectuate its purpose of providing financial pro-
tection to persons injured by the negligent operation of a motor vehicle.

**7. Insurance § 54—**

It is mandatory that the owner of a registered motor vehicle maintain
proof of financial responsibility throughout the registration of the vehicle,
G.S. 20-309, and such proof may be satisfied by a policy of automobile lia-
bility insurance, G.S. 20-314, G.S. 20-279.19, which may be procured by
compliance with the Assigned Risk Plan, G.S. 20-314.

**8. Insurance § 61—**

A policy of insurance issued pursuant to the Assigned Risk Plan may be
cancelled by the insurer only when it has been shown that (1) there has
been a nonpayment of premium or a suspension of the insured's driver's
license, and (2) the Commissioner of Insurance has approved the can-
cellation. G.S. 20-279.34, G.S. 20-314.

**9. Same—**

The failure of an insured under the Assigned Risk Plan to pay his in-
surer a fee for filing a certificate of financial responsibility (Form SR-22)
with the Department of Motor Vehicles is not a nonpayment of premium

within the purview of G.S. 20-279.34 for which the insurer may cancel a policy of automobile liability insurance.

**10. Trial § 57—**

While it is irregular for the court, in a trial by the court under agreement of the parties, to submit issues to itself, such procedure is harmless error where the findings of facts and the conclusions of law drawn therefrom can be ascertained in the judgment.

APPEAL by defendant from *Johnston, J.,* at the 27 February 1967 Civil Non-Jury Session of FORSYTH.

These are companion suits brought by an infant son and his father, consolidated for trial in the superior court. The pleadings are identical except in matters not material to the issues presented. In each case the plaintiff alleges that the defendant issued its policy of automobile liability insurance to Edward Kenneth Turner, that, on 5 September 1964, Turner was driving the Ford automobile named in the policy and negligently struck and injured the minor plaintiff, each plaintiff sued and recovered judgment against Turner, the father's judgment being for medical expenses incurred in the treatment of the son's injury, execution was issued and returned unsatisfied upon each judgment, and the plaintiff therefore seeks recovery of the amount of his judgment from the defendant. The answer in each case alleges that the policy of insurance was not in effect at the time of the accident for the reason that the defendant had cancelled it in accordance with G.S. 20-310. In each case the plaintiff filed a reply denying cancellation of the policy.

The plaintiffs introduced in evidence the pleadings, judgments and executions in their suits against Turner and two policies of insurance issued by the defendant to Turner, one covering the Ford automobile which he was driving at the time of the accident and the other covering a Dodge automobile owned by him. The policy covering the Ford automobile, upon its face, insured Turner against liability from the operation of the insured automobile from September 20, 1963 to September 20, 1964, the accident having occurred September 5, 1964.

Turner, called as a witness for the plaintiff, testified that he obtained the policy covering the Ford automobile through Floyd's Insurance Agency under the Assigned Risk Plan. It is not contended that Floyd's Insurance Agency was the agent of the defendant. In April 1964, Turner's wife had her driver's license revoked by the State Motor Vehicles Department for failure to maintain proof of financial responsibility. Turner, through Floyd, applied to the defendant for the issuance by it to the Department of Motor Vehicles of its certificate (Form SR-22), certifying his two policies as proof

of his wife's financial responsibility, this being permitted under the statute. The defendant did this and Turner received from the defendant a letter advising him that the certification had been so filed with the Motor Vehicles Department. Turner did not pay the additional premium charged by the defendant for the issuance of this certification.

Evidence introduced by the defendant tended to show:

On 27 September 1963, the defendant issued to Turner its "non-certified assigned risk policy" naming his Ford automobile as the insured vehicle, the stated period of the policy being from 20 September 1963 to 20 September 1964. Subsequently, it issued to Turner a second policy naming his Dodge automobile as the insured vehicle, the stated period of this policy being from 25 February 1964 to 20 September 1964. At the time of the issuance of each of these policies, the full premium then charged for that policy was paid by Turner. (The Ford automobile named in the first policy was being operated by Turner, himself, at the time of the accident in question.)

Thereafter, at the request of Turner, filed through the Floyd Agency, the defendant issued and caused to be filed with the Department of Motor Vehicles the above mentioned certification on Form SR-22, which stated, "This certification is effective from 5-11-64 and continues until cancelled or terminated in accordance with the financial responsibility laws and regulations of this state."

On 22 May 1964, the defendant mailed to Turner a properly addressed letter notifying him that the requested Form SR-22 had been filed with the Department of Motor Vehicles and that an additional premium of $4.00 was due on or before 22 June 1964. The defendant has never received payment of this additional premium.

On 7 July 1964, the due date for the payment of the additional premium having passed, the defendant mailed a properly addressed letter to Turner advising him that the policy covering the Ford automobile was cancelled as of 12:01 a.m., 23 July 1964 because of such non-payment, a certification by the Post Office showing the mailing on that date of "one piece of ordinary mail" so addressed. The letter so mailed to Turner on 7 July 1964 bore the pre-printed statement required by the statute upon notices of cancellation of automobile liability insurance policies, and the envelope in which it was so mailed bore upon its face the pre-printed statement "IMPORTANT INSURANCE NOTICE." At the same time, copies of the letter were mailed by the defendant to the manager of the North Carolina Assigned Risk Plan and to the Floyd Agency, the producer of record, and a form, designated "FS-4," was mailed by the defendant to the Department of Motor Vehicles showing the cancellation of the policy,

effective as of 23 July 1964. Each envelope bore the return address of the defendant. None of the letters were returned to it.

The unearned premium resulting from the cancellation of the policy covering the Ford automobile was then applied by the defendant to an additional premium which thereupon became payable on the policy covering the Dodge automobile since it was no longer a "second insured vehicle." Subsequently, this policy was also cancelled by the defendant for nonpayment of the balance of such additional premium. (The validity of such additional premium on the second policy and the validity of its cancellation are not material to this litigation.)

Turner, called as a witness by the plaintiff in rebuttal, first testified that he received from the defendant, about 22 May 1964, a notice that an additional premium of $4.00 was due to it from him, but that he did not receive the defendant's letter of 7 July 1964, the notice of cancellation. He then testified that the only letter which he had received from the defendant asking for payment of an additional premium was one dated 18 August 1964, which related to the additional premium then demanded by the defendant upon the policy covering the Dodge automobile.

William F. Floyd of the Floyd Insurance Agency, called as a witness by the plaintiff in rebuttal, testified that he did not receive a copy of the defendant's letter to Turner dated 7 July 1964, notifying Turner that the policy covering the Ford automobile was cancelled, or a copy of the defendant's letter of 22 May 1964 to Turner, notifying Turner that an additional premium of $4.00 was due from him to the defendant.

The court entered judgment for the plaintiffs' in which it enumerated certain findings of fact, including the following:

> "The defendant issued an Automobile Liability Insurance Policy to Edward Kenneth Turner and within the stated term of said policy, William Gray Harrelson was injured through the operation by Turner .by his automobile named in said policy. Judgments by the plaintiffs against the policyholder, Turner, were obtained in this Court, executions issued and thereafter returned unsatisfied by reason of the insolvency of said policyholder. The stated term of the policy was from September 20, 1963 until September 20, 1964. The injury of William Gray Harrelson occurred on September 5, 1964. * * * On May 11, 1964 the defendant issued a Financial Responsibility Insurance Certificate (SR-22) to the Commissioner of Insurance [sic] of North Carolina on behalf of the insured's wife, Mary Inez Sellers Turner. Said certificate listed thereon both automobiles owned

by said insured * * *. All premiums due and owing on said two policies of insurance issued by the defendant to Edward Kenneth Turner were paid before said policies were issued and placed into effect. * * * When the defendant filed said SR-22 with the Commissioner of Insurance [sic] of North Carolina, it became entitled to a fee of $4.00 for this service. A request for said $4.00 was mailed to said insured, but not received by him. On July 7, 1964 the defendant issued a Notice of cancellation of the policy of insurance on the 1960 Ford owned by Edward Kenneth Turner (FS-4), to be effective on July 23, 1964. Said notice was directed to the Commissioner of Insurance [sic] of North Carolina and was received by him. The defendant mailed but the insured, Edward Kenneth Turner, did not receive a Notice of Cancellation of said insurance policy on said Ford automobile to be effective July 23, 1964. The insured Edward Kenneth Turner did not receive any billing or other notice asking for a proposed fee of $4.00 for the filing of said SR-22, nor did he receive any notice of any proposed cancellation to be effective July 23, 1964. * * * The producer of said policy of insurance issued to Edward Kenneth Turner, was William F. Floyd * * * Mr. Floyd did not receive copies of defendant's * * * request for payment of fee of $4.00 * * * and Notice of Cancellation * * *. Under the rules of the Commissioner as set forth in the Commissioner's Handbook in effect during 1964, notification to the Producer of Record of each cancellation made before the expiration date fixed on the policy, is required. The defendant failed to do that."

After these findings of fact the court stated in its judgment its conclusions in the form of answers to issues. In substance, these were that the defendant did not cancel the policy covering the Ford automobile prior to 5 September 1964, as of 23 July 1964 the defendant did not have the right to cancel such policy, the minor plaintiff was injured by the operation of the Ford automobile by Turner while the policy was in force, judgments were obtained by the plaintiffs against Turner on which executions were returned unsatisfied due to Turner's insolvency, and the plaintiffs are entitled to recover the amounts of such judgments, with interest and costs, from the defendant.

The defendant assigns as error substantially all of the foregoing findings and conclusions, the failure of the court to make findings of fact requested by the defendant, various rulings upon the admission of evidence, and the denial of the defendant's motions for judgment of nonsuit.

It is stipulated that the policy in question contained the following provision:

> "23.   Cancelation.   This policy may be canceled by the named insured by mailing to the company written notice stating when thereafter the cancelation shall be effective. *This policy may be canceled by the company by mailing to the named insured at the address shown in this policy written notice stating when not less than ten days thereafter such cancelation shall be effective. The mailing of notice as aforesaid shall be sufficient proof of notice.* The effective date and hour of cancelation stated in the notice shall become the end of the policy period. Delivery of such written notice either by the named insured or by the company shall be equivalent to mailing." (Emphasis added.)

*Deal, Hutchins and Minor by Richard Tyndall, Edwin T. Pullen and Roy L. Deal for defendant appellant.*
*Spry, Hamrick & Doughton by Bobby L. Newton and Edmund I. Adams for plaintiff appellees.*

LAKE, J.   The sole question upon this appeal is whether the policy of liability insurance issued by the defendant to Turner upon his Ford automobile was cancelled prior to the accident in which the minor plaintiff was injured.

While it is not expressly so found as a fact by the trial judge, it is established by the evidence of both parties, and not in dispute, that the policy was issued as an assigned risk policy and that Turner's driver's license had not been suspended. Consequently, at the time of issuance, this policy was what is known as a non-certified assigned risk policy, issued pursuant to and subject to the provisions of the Financial Responsibility Act of 1957. G.S. 20-309 *et seq.*

The court below concluded that (1) the defendant did not cancel the policy prior to the accident, and (2) the defendant did not have the right to cancel such policy. If either of these conclusions is supported by the court's findings of fact, which findings, in turn, are supported by the evidence, the judgment for the plaintiff must be affirmed.

There is no evidence whatever in the record of any handbook or rules or regulations issued or promulgated by the Commissioner of Insurance or by the Commissioner of Motor Vehicles. The record shows that the plaintiff attempted to examine their witness Floyd with reference to some handbook, but the defendant's objection to such testimony was sustained by the court and there is nothing to indicate that any handbook or rule or regulation of either Commis-

sioner was introduced or offered in evidence. There being no evidence to support the trial court's finding of fact with reference to a rule of the Commissioner of Insurance, the defendant's exception to this finding, and to the finding that the defendant failed to comply with such rule, must be sustained and these findings must be disregarded. See: *Little v. Stevens*, 267 N.C. 328, 148 S.E. 2d 201; *Trust Co. v. Miller*, 243 N.C. 1, 89 S.E. 2d 765.

Obviously, the statement in the trial court's finding of fact that the notice of cancellation issued by the defendant was directed to and received by the Commissioner of Insurance was a mere *lapsus linguæ*. Clearly, the court intended to find that such notice was directed to and received by the Commissioner of Motor Vehicles, all of the evidence so indicating and there being no contrary contention or suggestion. It is equally apparent that in the findings that the defendant issued the notice of cancellation on 7 July and that the defendant mailed such notice to Turner, the court intended to find that such mailing occurred on 7 July 1964, all of the evidence so indicating and there being no contention or suggestion of a mailing of the notice on a different date. We so construe these findings of fact. Upon appeal we may look to the evidence in the record to interpret the findings of fact made by the trial judge. See *Wynne v. Allen*, 245 N.C. 421, 426, 96 S.E. 2d 422.

The findings of fact by the trial court, except as above noted, are supported by evidence in the record. These findings are, therefore, conclusive. *Insurance Co. v. Insurance Co.*, 266 N.C. 430, 146 S.E. 2d 410; *Stewart v. Rogers*, 260 N.C. 475, 133 S.E. 2d 155; *Goldsboro v. R. R.*, 246 N.C. 101, 97 S.E. 2d 486; *Wynne v. Allen, supra.* The trial court's conclusions drawn from these findings of fact are, however, subject to review. We turn first to the trial court's conclusion that the defendant had no right to cancel the policy.

Although there was no finding of fact concerning it, it is undisputed that the policy in question contained, with reference to the company's right to cancel, the provision quoted above in the statement of facts. Obviously, this clause in the contract does not purport to limit the company's right to cancel to any particular factual situation. The clause, on its face, gives the company the right to cancel for any reason satisfactory to it by following the procedure prescribed in the clause. An insurance policy is a contract between the parties thereto and its provisions will govern their rights thereunder unless those provisions are in conflict with the law of the State. *Insurance Co. v. Insurance Co.*, 269 N.C. 341, 152 S.E. 2d 436; *Muncie v. Insurance Co.*, 253 N.C. 74, 116 S.E. 2d 474. On the other hand, a statutory requirement or limitation, which is applicable to a policy of insurance, is to be read into the policy as if written

therein and controls a contrary provision actually written into the policy. *Crisp v. Insurance Co.*, 256 N.C. 408, 124 S.E. 2d 149; *Swain v. Insurance Co.*, 253 N.C. 120, 116 S.E. 2d 482; *Howell v. Indemnity Co.*, 237 N.C. 227, 74 S.E. 2d 610.

The policy in question having been issued pursuant to the Assigned Risk Plan and for the purpose of fulfilling the requirement of the Financial Responsibility Act of 1957, the provisions of that act, relative to the cancellation of such policies, must be read into this policy and construed liberally so as to effectuate the purpose of the act. *Jones v. Insurance Co.*, 270 N.C. 454, 155 S.E. 2d 118; *Insurance Co. v. Hale*, 270 N.C. 195, 154 S.E. 2d 79. The purpose of that act is to assure the protection of liability insurance, or other type of established financial responsibility, up to the minimum amount specified in the act, to persons injured by the negligent operation of a motor vehicle upon the highways of this State. *Jones v. Insurance Co., supra; Insurance Co. v. Hale, supra; Swain v. Insurance Co., supra.* To that end, the act makes it mandatory that the owner of a registered motor vehicle maintain proof of financial responsibility throughout such registration of the vehicle. G.S. 20-309. This may be done by the owner's obtaining, and maintaining in effect, a policy of automobile liability insurance. G.S. 20-314; G.S. 20-279.19. To enable an owner so to comply with this requirement of the act, even though he is unable to procure such insurance in the usual way, the act provides that the provisions of the Financial Responsibility Act of 1953, with reference to the Assigned Risk Plan, "shall apply to filing and maintaining proof of financial responsibility required by" the Act of 1957. G.S. 20-314.

Insurance supplied by a policy issued under the Assigned Risk Plan is compulsory both as to the insured owner and as to the insurance carrier. *Insurance Co. v. Hale, supra.* The right of the carrier to cancel such a policy is subject to the provisions of the 1957 Act, as so implemented by the provisions of the 1953 Act incorporated by reference therein. The two acts are to be construed together so as to harmonize their provisions and to effectuate the purpose of the Legislature. *Faizan v. Insurance Co.*, 254 N.C. 47, 118 S.E. 2d 303. Their provisions, liberally construed to effectuate the legislative policy, control any provision written into the policy which otherwise would give the company a greater right to cancel than is provided by the statute.

The 1957 Act, in G.S. 20-309(e) and in G.S. 20-310(a), prescribes the procedure pursuant to which a policy issued for the purpose of complying with the requirements of that act may be cancelled by the insurance carrier having the right to cancel. In order to can-

cel such policy, the carrier must comply with these procedural requirements of the statute or the attempt at cancellation fails. *Insurance Co. v. Hale, supra.* Of course, the requirements of the policy, itself, must also be fulfilled for an effective cancellation.

The 1957 Act in G.S. 20-310(b) limits the right of the insurance carrier to cancel a policy which has been in effect for 60 days, as the Turner policy here in question had been, to certain factual situations. These are, in substance: (1) Failure of the insured to pay the premium or any part thereof; (2) violation by the insured of a valid provision of the policy; (3) suspension or revocation of the driver's license of the insured for more than 30 days; or (4) his conviction or forfeiture of bail for certain offenses. It is expressly provided in G.S. 20-310(b) that the provisions thereof shall not apply to policies issued under the Assigned Risk Plan. Obviously, however, it was not the purpose of the Legislature to give to the company a more extensive right of cancellation of an assigned risk policy than of other policies.

G.S. 20-279.34, incorporated by reference into the Financial Responsibility Act of 1957 by G.S. 30-314 (See *Faizan v. Insurance Co., supra*), provides that the carrier to whom a risk is assigned under the plan "shall upon payment of a proper premium issue a policy" and authorizes the Commissioner of Insurance "to approve the cancellation of a motor vehicle liability policy by an insurance carrier." This section then provides: "[T]he power of the Commissioner of Insurance to approve the revocation or cancellation of insurance under the provisions of this article shall be exercised only in the event of nonpayment of premium or when the Department of Motor Vehicles suspends the license of the insured under the authority granted to it under the Motor Vehicles Act." Interpreting this statute liberally, in order to accomplish the legislative purpose of maintenance of financial responsibility throughout the period of registration of the vehicle, we construe it to mean that, notwithstanding provisions in the policy, an insurance carrier may cancel an assigned risk policy, issued to fulfil the requirements of either the Act of 1953 or the Act of 1957, only when it is shown both that (1) there has been a nonpayment of premium or a suspension of the driver's license of the insured, and (2) the Commissioner of Insurance has approved the cancellation, which he may apparently do by the issuance of general rules and regulations with reference thereto.

Since G.S. 20-279.34 is incorporated by reference into the Financial Responsibility Act of 1957, it is unnecessary for us to determine upon this appeal whether the Turner policy, originally issued as a "non-certified assigned risk policy" to meet the requirements of the 1957 Act, became, in legal effect, a "certified assigned risk policy,"

subject to all the provisions of the 1953 Act, when the defendant certified this policy to the Department of Motor Vehicles, by filing Form SR-22, as proof of financial responsibility of Mrs. Turner, whose driver's license had been suspended. In either event, the company's right to cancel is contingent upon a "nonpayment of premium" by Turner, his driver's license not having been suspended or revoked.

The trial court found as a fact, and it is not disputed, that when the policy was originally issued, Turner paid the premium thereon in full. When the certificate (Form SR-22) was filed with the Department by the defendant at Turner's request on behalf of Mrs. Turner, the defendant was entitled to demand and receive an additional $4.00, which it did demand but did not receive. Construing "nonpayment of premium," as used in G.S. 20-279.34, and as incorporated by reference into the Financial Responsibility Act of 1957, so as to accomplish the purpose of the Legislature, we hold that this charge, while lawfully and rightfully due the defendant, was not a premium on the policy, but was a charge for the issuance by the defendant of a separate and distinct document whereby it incurred a different obligation. It follows that whatever right the nonpayment of this charge may have given the defendant to cancel the SR-22 certificate, such nonpayment of this charge did not give the defendant the right to cancel the policy. We, therefore, approve this conclusion by the trial court.

Since the company had no right to cancel the policy, its attempt to do so, even if it followed the prescribed procedure for cancellation, was of no effect. Thus, it is unnecessary for us to determine the correctness of the trial court's conclusion that it did not follow the prescribed procedure for cancellation. In *Faizan v. Insurance Co., supra,* we said that G.S. 20-279.22, prescribing a procedure for cancellation of a certified liability policy, does not apply to the cancellation of a policy issued pursuant to the 1957 Financial Responsibility Act; that is, to a "non-certified assigned risk policy," such as Turner's policy was at the time of its issuance. For the reasons above mentioned, it is not necessary for us now to determine whether the Turner policy became, in legal effect, a "certified" policy subject to all the requirements of the 1953 Act when the SR-22 certificate was issued by the defendant. Thus, it is not necessary for us now to determine whether, by reason of the issuance of the SR-22 certificate, G.S. 20-279.22 applies to the attempt at cancellation in this case. Obviously, the procedure there prescribed was not followed in this instance.

It was irregular for the trial court to state its conclusions in the form of issues submitted to itself. *Sherrill v. Boyce,* 265 N.C. 560,

144 S.E. 2d 596; *Anderson v. Cashion,* 265 N.C. 555, 144 S.E. 2d 583; *Daniels v. Insurance Co.,* 258 N.C. 660, 129 S.E. 2d 314. The defendant excepted to this, but this irregularity is harmless error in this instance, it being clear from the judgment what the court found as facts and what conclusions of law it drew thereon, these being separated in the judgment.

Affirmed.